**22-1056**

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

FOR THE FIRST CIRCUIT

➤➤◄◄

JOHN DOE,

*Plaintiff-Appellant,*

*v.*

MASSACHUSETTS INSTITUTE OF TECHNOLOGY,

*Defendant-Appellee.*

_____

*On Appeal from an Order of the United States District Court*
*for the District of Massachusetts, Boston in Action No. 1:21-cv-12060-RGS*

## APPENDIX FOR
## PLAINTIFF-APPELLANT

NESENOFF & MILTENBERG, LLP
*Attorneys for Plaintiff-Appellant*
363 Seventh Avenue, 5th Floor
New York, New York 10001
212-736-4500

*Of Counsel:*

Philip A. Byler

## **Table of Contents**

**Page**

District Court Docket Entries  .................................................................   A1

Complaint and Jury Demand, dated December 16, 2021 .......................   A6

Plaintiff's *Ex Parte* Motion to Proceed Under Pseudonym,
        dated December 16, 2021 ................................................   A39

Declaration of Tara J. Davis, for Plaintiff, in Support of Motion,
        dated December 16, 2021 ................................................   A42

        Annexed to Davis Declaration -
        Proposed Order.........................................................................   A45

Memorandum of Law by Plaintiff in Support of Motion,
        dated December 16, 2021 ................................................   A46

Motion by Plaintiff for Reconsideration to Proceed Under
        Pseudonym, dated January 11, 2022................................   A58

        Annexed to Motion -
        Proposed Order to Show Cause.................................................   A61

Memorandum of Law by Plaintiff in Support of Motion for
        Reconsideration, dated January 10, 2022 ........................   A63

Declaration of Tara J. Davis, for Plaintiff, in Support of Motion for
        Reconsideration, dated January 10, 2022 ........................   A76

        Exhibit A to Davis Declaration -
        Order of the Honorable Richard G. Stearns,
        dated December 21, 2021.........................................................   A81

        Exhibit B to Davis Declaration -
        Complaint and Jury Demand, dated December 16, 2021
        (Reproduced Herein at pages A6 to A38)

i

**Table of Contents**
**(continued)**

**Page**

Proposed Order to Show Cause ................................................................. A84

Notice of Appeal, dated January 19, 2022 ............................................ A85

# A1

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

APPEAL,STAYED

## United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:21-cv-12060-RGS

Doe v. Massachusetts Institute of Technology
Assigned to: Judge Richard G. Stearns
Demand: $100,000
Case in other court:  USCA - First Circut, 22-01056
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 12/16/2021
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**John Doe**

represented by **Philip A. Byler**
Nesenoff & Miltenber, LLP
363 Seventh Avenue
5th Floor
New York, NY 10001
212-736-4500
Fax: 212-736-2260
Email: pbyler@nmllplaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tara Jill Davis**
Nesenoff & Miltenberg LLP
363 Seventh Avenue
5th Floor
New York, NY 10001
212-736-4500
Email: tdavis@nmllplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Regina M. Federico**
Nesenoff & Miltenberg LLP
101 Federal Street, 19th Flr.
Boston, MA 02110
617-209-2127
Email: rfederico@nmllplaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Massachusetts Institute of Technology**

## A2

| Date Filed | # | Docket Text |
|---|---|---|
| 12/16/2021 | 1 | COMPLAINT against Massachusetts Institute of Technology Filing fee: $ 402, receipt number AMADC-9102389 (Fee Status: Filing Fee paid), filed by John Doe. (Attachments: # 1 Civil Cover Sheet, # 2 Category Form)(Davis, Tara) (Entered: 12/16/2021) |
| 12/16/2021 | 2 | MOTION Proceed Under Pseudonym by John Doe. (Attachments: # 2 Declaration of Tara Davis, Esq. in Support of Plaintiff's Ex Parte Motion to Proceed Under Pseudonym, # 3 Text of Proposed Order Proposed Order)(Davis, Tara) Modified on 12/16/2021 to docket memorandum of law as a separate entry, see ECF # 5 (Pacho, Arnold). (Entered: 12/16/2021) |
| 12/16/2021 | 3 | ELECTRONIC NOTICE of Case Assignment. Judge Richard G. Stearns assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge M. Page Kelley. (Finn, Mary) (Entered: 12/16/2021) |
| 12/16/2021 | 4 | Summons Issued as to Massachusetts Institute of Technology. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (Geraldino-Karasek, Clarilde) (Entered: 12/16/2021) |
| 12/16/2021 | 5 | MEMORANDUM in Support re 2 MOTION Proceed Under Pseudonym filed by John Doe. [Docketed as a separate entry by clerk per CM/ECF procedures]. (Pacho, Arnold) (Entered: 12/16/2021) |
| 12/21/2021 | 6 | Judge Richard G. Stearns: ELECTRONIC ORDER entered denying 2 Motion to proceed under a pseudonym. Federal Rule of Civil Procedure 10(a) requires that "[t]he title of the complaint must name all of the parties." "This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Plaintiff B v. Francis,* 631 F.3d 1310, 1315 (11th Cir. 2011); *Doe v. Blue Cross & Blue Shield United,* 112 F.3d 869, 872 (7th Cir. 1997) ("Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts.").<br><br>In a broader context, the First Circuit has held that a showing of "exceptional circumstances" is required to "overbear the public's right of access" to the "starting point must always be the common-law presumption in favor of public access... to judicial records [to promote] quality, honesty and respect for our legal system." *Nat'l Org. For Marriage v. McKee,* 649 F.3d 34, 70 (1st Cir. 2011); *see also F.T.C. v. Standard Fin. Mgmt. Corp.,* 830 F.2d 404, 412 (1st Cir. 1987). In the more immediate context, exceptional circumstances have been held to justify the use of a plaintiff's pseudonym in cases involving "abortion, birth control, [gender identity], mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Doe v. Megless,* 654 F.3d 404, 408 (3d Cir. 2011); *see also Francis M. Dougherty, Propriety and Effect of Use of Fictitious Name of Plaintiff in Federal Court,* 97 A.L.R. Fed. 369 (1990) (collecting cases). That a plaintiff may suffer embarrassment or economic harm as a result of public identification does not rise to the level of exceptional circumstances; rather, the plaintiff must show "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate,* 596 F.3d 1036, 1043 (9th Cir. 2010).<br><br>Doe's expressed "fears" concern "the highly sensitive nature and privacy issues that could be involved with being identified as a perpetrator of sexual assault." Pl.'s Mem. at 5. Specifically, given that Doe "has protected his identity thus far and has taken steps to keep his identity... confidential," *id.* at 7, Doe argues that the fact that his identity as a Title IX |

# A3

respondent could be ascertained by "a simple online search" would "result in significant harm... including physical, psychological, emotional, and reputational damages, economic injuries, and the loss of educational career opportunities." *Id.* at 8. The court finds this speculative conjecture insufficient to overcome the presumption of public access. Moreover, if Doe's fears are future reputational harm, he should understand that proceeding anonymously now is no cure, as the full facts of the case will emerge if the litigation proceeds to trial.

If Doe intends to proceed with this matter, he must file no later than January 11, 2022, an amended complaint under his true name.

(RGS, law2) (Entered: 12/21/2021)

| 12/29/2021 | 7 | NOTICE of Appearance by Regina M. Federico on behalf of John Doe (Federico, Regina) (Entered: 12/29/2021) |
|---|---|---|
| 01/10/2022 | 8 | MOTION for Order to Show Cause by John Doe.(Davis, Tara) (Main Document 8 replaced on 1/11/2022) (Pacho, Arnold). (Additional attachment(s) added on 1/11/2022: # 1 Text of Proposed Order to Show Cause) (Pacho, Arnold). Modified on 1/11/2022 to attach motion omitted in original filing (Pacho, Arnold). (Entered: 01/10/2022) |
| 01/10/2022 | 9 | MEMORANDUM in Support re 8 MOTION for Order to Show Cause filed by John Doe. (Davis, Tara) (Entered: 01/10/2022) |
| 01/10/2022 | 10 | DECLARATION re 8 MOTION for Order to Show Cause , 9 Memorandum in Support of Motion by John Doe. (Attachments: # 1 Exhibit Exhibit A - Order, # 2 Exhibit Exhibit B - Complaint, # 3 Text of Proposed Order Proposed Order)(Davis, Tara) (Entered: 01/10/2022) |
| 01/10/2022 | 11 | MOTION for Leave to Appear Pro Hac Vice for admission of Philip A. Byler Filing fee: $ 100, receipt number AMADC-9131318 by John Doe. (Attachments: # 1 Affidavit Affidavit of Philip A. Byler, Esq.)(Davis, Tara) (Entered: 01/10/2022) |
| 01/11/2022 | 12 | Judge Richard G. Stearns: ELECTRONIC ORDER entered denying 8 Motion for Order to Show Cause. |

Doe's motion for reconsideration to proceed under a pseudonym is <u>DENIED</u>. "A court appropriately may grant a motion for reconsideration 'where the movant shows a manifest error of law or newly discovered evidence.'" *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 81-82 (1st Cir. 2008), quoting *Kansky v. Coca-Cola Bottling Co. of New England*, 492 F.3d 54, 60 (1st Cir. 2007). As Doe concedes, "neither the U.S. Supreme Court nor the First Circuit have definitively articulated the circumstances under which a plaintiff may use a pseudonym." Doe Mem. (Dkt # 9) at 3-4. Accordingly, in reaching its decision the court appropriately relied on the purposes underlying the controlling rule, Fed. R. Civ. P. 10(a), as well as controlling First Circuit precedent declaring that "exceptional circumstances" are required to "overbear the public's right of access." *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011). Having carefully reviewed Doe's concerns about proceeding in this action under his true name, the court concluded that Doe had not met his high burden to proceed under a pseudonym.

The court rejects the notion that it "must turn to the guidance established by neighboring district and circuit courts." Doe Mem. at 4. Although precedent from other jurisdictions can certainly be instructive, it is not binding on the First Circuit or, by extension, on this court. *See Benenson v. Comm'r of Internal Revenue*, 887 F.3d 511, 516 (1st Cir. 2018) ("A circuit need not follow other circuits' decisions where 'there appear cogent reasons for rejecting them.'") (citation omitted). Further, the fact that other judges within this court

have reached a different conclusion under different factual circumstances is not conclusive. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citation omitted). In any event, the court notes that other decisions within this court have reached a similar conclusion to the one in this case. *See, e.g.*, *Wiler v. Falmouth Police Dep't*, No. 20-cv-11413, Dkt # 5 (D. Mass. Aug. 21, 2020) (female plaintiff accusing Falmouth Police Department officers of harassing and stalking her did not "present[ ] the type of exceptional circumstances that warrant permission to proceed anonymously"); *Harnois v. Univ. of Mass. at Dartmouth*, No. 19-cv-10705, Dkt # 16 (D. Mass. Apr. 25, 2019) ("fears" of male plaintiff -- alleging mishandling of sexual misconduct allegations against him -- of reputational harm and potential reprisal did not constitute exceptional circumstances).

The court will stay the case so that Doe may seek collateral review of the court's order.

(RGS, law2) (Entered: 01/11/2022)

| | | |
|---|---|---|
| 01/11/2022 | 13 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 11 Motion for Leave to Appear Pro Hac Vice. Added Philip A. Byler. <br><br> **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account.** <br><br> Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. <br><br> A Notice of Appearance must be entered on the docket by the newly admitted attorney. <br><br> (Pacho, Arnold) (Entered: 01/11/2022) |
| 01/11/2022 | | Judge Richard G. Stearns: ORDER entered. Case stayed per order (Dkt # 12). (Pacho, Arnold) (Entered: 01/11/2022) |
| 01/12/2022 | 14 | NOTICE of Appearance by Philip A. Byler on behalf of John Doe (Byler, Philip) (Entered: 01/12/2022) |
| 01/19/2022 | 15 | NOTICE OF APPEAL as to 6 Order on Motion for Miscellaneous Relief,,,,,,,,,,,,,,, 12 Order on Motion for Order to Show Cause,,,,,,,,,,,,, by John Doe Filing fee: $ 505, receipt number AMADC-9144826 Fee Status: Not Exempt. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 2/8/2022. (Byler, Philip) (Entered: 01/19/2022)** |
| 01/20/2022 | 16 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals re 15 Notice of Appeal. (Dore, Samantha) (Entered: 01/20/2022) |
| 01/20/2022 | 17 | USCA Case Number 22-1056 for 15 Notice of Appeal filed by John Doe. (Dore, Samantha) (Entered: 01/20/2022) |

1/31/22, 1:06 PM                    CM/ECF - USDC Massachusetts - Version 1.6.2 as of 9/17/2021

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/31/2022 13:06:45 | | | |
| **PACER Login:** | phpappeals10east | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-12060-RGS |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

-------------------------------------------------------x
JOHN DOE,                  |     Case No.
                                 |
           **Plaintiff,**    |
    **v.**                   |
                                 |
MASSACHUSETTS INSTITUTE OF  |
TECHNOLOGY,             |
                                 |
          **Defendant.**   |
-------------------------------------------------------x

**COMPLAINT AND JURY DEMAND**

    **PLAINTIFF JOHN DOE** ("John Doe," a pseudonym),[1] by his attorneys Nesenoff &

Miltenberg LLP, as and for his Complaint against DEFENDANT MASSACHUSETTS

INSTITUTE OF TECHNOLOGY ("MIT"), respectfully alleges as follows:

**THE NATURE OF THIS ACTION**

    1.    This breach of contract, promissory estoppel and breach of contract/common law

denial of basic fairness/arbitrary and capricious decision-making suit is brought on behalf of

Plaintiff John Doe, who was expelled from MIT within a month of graduation for alleged sexual

misconduct that purportedly occurred over a year earlier and that he did not commit; the expulsion

was issued after an unfair process not in compliance with the MIT Student Code's commitment to

non-discrimination based on sex.

    2.    In January 2016, John Doe was a third-year student at MIT on a three-year program.

On January 26, 2016, John Doe's former girlfriend "Jane Roe" (a pseudonym) filed a complaint

with MIT alleging nonconsensual sexual contact and nonconsensual sexual intercourse by John

_____

[1] Plaintiff John Doe has filed herewith a motion to proceed by pseudonym.

Doe based on one night involving sexual intercourse on February 27, 2015, almost a year earlier than when the complaint was filed by Jane Roe with MIT 's Title IX Office. During the course of the investigation, MIT's investigators on its own initiative asserted a second charge against Doe, for sexual harassment, arising from the period of time when Doe was Roe's boyfriend in the 2013-2014 school year, two years prior to Roe's filing of the complaint with MIT's Title IX Office.

3.      Upon the filing of Jane Roe's disciplinary complaint, MIT's Title IX office launched an investigation, interviewing John Doe, Jane Roe and other students and reviewing various documents. Radical feminist anti-male bias on the MIT campus guided the investigation report's conclusions, which included that John Doe was responsible for (i) nonconsensual sexual contact and nonconsensual sexual intercourse based on the sex that occurred on February 27, 2015 and (ii) sexual harassment based on the period of time when John Doe was Jane Roe's boyfriend in the 2013-2014 school year. MIT presumed the female complainant's story to be true (which it wasn't), and presumed John Doe not to be truthful (which wasn't the case) in order to avoid being found responsible. Importantly, MIT failed to provide John Doe an opportunity to submit a written rebuttal to the investigation report.

4.      On April 25, 2016, MIT held a hearing before a panel of three professors. At the hearing, John Doe denied responsibility. Only two days later, on April 27, 2016, the Chair of the MIT Committee on Discipline sent John Doe a letter informing him that MIT found him responsible for nonconsensual sexual contact and nonconsensual sexual intercourse on February 27, 2015 and for sexual harassment during the time of the 2013-2014 school year and notified him that the sanction was expulsion -- in effect, rubber stamping the investigation report.

5.      Even though John Doe filed an appeal, arguing that the evidence did not support MIT's findings or the severe sanction of expulsion. MIT denied the appeal on May 13, 2016,

permanently expelling John Doe, just weeks shy of his graduation. John Doe, having experienced the losses resulting from having a disciplinary record he did not deserve and not having his diploma that he all but earned, brings this action to rectify the real damage to his life.

## THE PARTIES

6.    John Doe is a natural person who is a citizen of New Jersey, residing with his wife in Jersey City, New Jersey, while working as a software engineer. Until the MIT disciplinary proceeding that was brought as a result of Jane Roe's belated university complaint and that ended in expulsion, John Doe had an unblemished disciplinary record at MIT.

7.    MIT is an educational institution located in in the city of Cambridge, in the Commonwealth of Massachusetts, with a main address of 77 Massachusetts Avenue, Cambridge, Massachusetts 02139. MIT was incorporated in 1861. The self-stated mission of MIT is to advance knowledge and educate students in science, technology and other areas of scholarship, and MIT represents publicly that it seeks to develop in each member of the MIT community the ability and passion to work wisely, creatively and effectively for the betterment of humankind. The motto of MIT is "Mens et manus" ("Mind and hand"). As of October 30, 2019, MIT had 4,530 undergraduate students, approximately half of whom were women and half of whom were minority students. MIT has received and receives federal funding.

## JURISDICTION AND VENUE

8.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship: the Plaintiff John Doe is a citizen of the State of New Jersey and the Defendant MIT is a citizen of the State of Massachusetts.

9.    This Court has personal jurisdiction over MIT on the grounds that MIT is conducting business within the State of Massachusetts and is a resident of the State of

Massachusetts and that MIT's actions that are the subject of this action took place in the District of Massachusetts.

10.    Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.    The Contract: MIT's Mind and Hand Book and Federal Regulation.**

11.    At the time of John Doe's disciplinary case at MIT, the 2015 MIT Mind and Hand Book was in effect. The Mind and Hand Book was published by the MIT Division of Student Life and took its name from MIT's motto "Mens et manus," which is Latin for "Mind and hand." The Mind and Hand Book provided the standards, regulations and procedures to govern the behavior conduct of all undergraduate and graduate students.

12.    The Policies Regarding Student Behavior, Sexual Misconduct (p. 29) section of the 2015 MIT Mind and Hand Book, II (22) states:

> MIT is committed to providing a productive living and learning community in which students can pursue their educational goals. Sexual misconduct undermines this commitment and affects the ability of students to focus on their educational achievement. Therefore, MIT will not tolerate nor condone any form of sexual misconduct. MIT students are prohibited from engaging in sexual misconduct, as defined below. Moreover, MIT may take additional action in response to sexual misconduct as part of federal Title IX requirements (see http://titleix.mit.edu). No one shall be retaliated against for participating in the Institute's complaint resolution procedure in good faith as a complainant, a witness, an investigator, or in any other capacity.

13.    That same section of the 2015 MIT Mind and Hand Book continues on to define and outline consent (p. 30) as follows:

> Effective consent must be obtained for each instance and each escalation of sexual activity. Obtaining effective consent is the responsibility of the party initiating sexual activity. Doing otherwise may constitute sexual misconduct and is a violation of MIT policy. Effective Consent is:

4

• informed;
• freely and actively given;
• mutually understandable words or actions;
• which indicate a willingness to participate in
• mutually agreed upon sexual activity.

Further:

• Initiators of sexual activity are responsible for obtaining effective consent.
• Silence or passivity is not effective consent.
• The use of intimidation, coercion, threats, force, or violence negates any consent obtained.
• Consent is not effective if obtained from an individual who is incapable of giving consent due to one or more of the following or other reasons:
    • a mental, intellectual, or physical disability; or
    • is under the legal age to give consent; or
    • is asleep, unconscious, or physically helpless; or
    • is incapacitated by alcohol or other drugs.
• Consent to one type of sexual activity does not imply consent to any other or all types of sexual activity.
• A person can withdraw consent at any time.
• Consent to sexual activity at one time does not imply consent to the same or other sexual activity at any other time.
• Refusal, lack of consent, or non-consent may be expressed in many ways, verbally or physically. Physical resistance is not necessary to communicate a lack of consent. It is not necessary to resist physically or express verbally to indicate a lack of consent. It is the responsibility of the initiator of the sexual activity to obtain effective consent.

14.    The Policies Regarding Student Behavior, Sexual Misconduct (p. 31) section of the

2015 MIT Mind and Hand Book, II (22) states the following regarding consent and the capacity to

do so:

In evaluating whether a person was incapacitated for purposes of evaluating effective consent, the Institute considers two questions: (1) Did the person initiating sexual activity know that their partner was incapacitated? and if not, (2) Should a sober, reasonable person in the same situation have known that their partner was incapacitated? If the answer to either of these questions is "yes," effective consent was absent.

15.    The Policies Regarding Student Behavior, Sexual Misconduct (p. 33) section of the

2015 MIT Mind and Hand Book, II (22) states:

5

Nonconsensual sexual contact is defined as any physical contact with another person of a sexual nature without that person's effective consent. The touching of a person's intimate parts (such as genitalia, groin, breast, buttocks, mouth, or clothing covering same); touching a person with one's own intimate parts; or forcing a person to touch another's intimate parts would be violations of this policy if they occur without effective consent.

Nonconsensual sexual penetration is defined as the sexual penetration of any bodily opening with any object or body part without effective consent. This could be committed by force, threat, intimidation, coercion, or through exploitation of another's mental or physical condition (such as lack of consciousness, incapacitation due to drugs or alcohol, age, or disability) of which the respondent was actually aware or which a reasonable person in the respondent's position should have been aware.

16.     The Policies Regarding Student Behavior, Sexual Misconduct (p. 32) section of the

2015 MIT Mind and Hand Book, II (22) states:

Sexual Harassment is unwelcome conduct of a sexual nature, such as unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, when:

  • submission to such conduct is made either explicitly or implicitly a condition of an individual's employment or academic standing; or
  • submission to, or rejection of, such conduct is used as the basis for employment decisions (such as advancement, performance evaluation, or work schedule) or academic decisions (such as grading or letters of recommendation); or
  • such conduct has the purpose or effect of unreasonably interfering with an individual's working conditions, academic experience, or living conditions, or of creating a hostile working, academic, or living environment.

Even one instance of sexual harassment, if severe enough, may create a hostile environment. A non-exhaustive set of examples of conduct that might constitute sexual harassment are included below. One or more of these actions will be considered sexual harassment only when that conduct has the purpose or effect of unreasonably interfering with another individual's working conditions, academic experience, or living conditions, or of creating a hostile working, academic, or living environment. . . .

Examples of verbal sexual harassment may include unwelcome conduct such as unwelcome sexual flirtation, advances or propositions or requests for sexual activity or dates; asking about someone else's sexual activities, fantasies, preferences, or history; discussing one's own sexual activities, fantasies, preferences, or history; verbal abuse of a sexual nature; suggestive comments;

sexually explicit jokes; turning discussions at work or in the academic environment to sexual topics; and making offensive sounds such as smacking or licking lips, kissing sounds, or "wolf whistles."

Examples of nonverbal sexual harassment include unwelcome conduct such as displaying sexual objects, pictures or other images; invading a person's personal body space, such as standing closer than appropriate or necessary or hovering; displaying or wearing objects or items of clothing which express sexually offensive comments; making sexual gestures with hands or body movements; looking at a person in a sexually suggestive or intimidating manner; or delivering unwanted letters, gifts, or other items of a sexual nature. In addition, nonconsensual sexual contact, sexual exploitation, and nonconsensual sexual penetration may constitute nonverbal instances of sexual harassment.

17.    The Policies Regarding Student Behavior, MIT's Response (p. 34) section of the

2015 MIT Mind and Hand Book, II (22) states:

Except in those cases where the student has contacted a strictly confidential resource, the Institute will conduct a prompt, thorough, and impartial investigation and will take appropriate measures to terminate the misconduct, prevent its recurrence, and address its effects. This response may include formal disciplinary action, which may be instituted by an individual complainant or the Institute itself. The sanctions of disciplinary suspension and disciplinary expulsion will be strongly considered when a student is found to have violated any part of the nonconsensual sexual contact, nonconsensual sexual penetration, sexual exploitation, or retaliation provisions of this policy; and for severe violations of the sexual harassment provision.

18.    The Complaint and Disciplinary Procedures (p. 61) section of the 2015 MIT Mind

and Hand Book, VI, states:

Anyone—including individual students, faculty members, and employees of the Institute—may bring a formal complaint against a student to the Committee on Discipline (COD). The COD reviews cases of academic offenses, violations of Institute regulations and standards, and other infractions alleged to have been committed by students.

A formal complaint against a student must be submitted in writing to OSC. The charge and its documentation are transmitted to the chair of the COD. After a review of the documentation, the chair will decide whether or not a hearing by the COD is warranted, and, if so, what the appropriate forum will be. The COD has the authority to impose any sanction it deems appropriate. Possible sanctions include placing a letter in a student's disciplinary file, probation, suspension, and expulsion. Sanctions may also include educational and/or restorative components

meant to address the wrongdoing and serve the larger community. Detailed procedures for resolving complaints alleging that a student has violated MIT policies are available online at http://cod.mit.edu/rules and in print from the Office of Student Citizenship.

19.     The Resources, Committee on Discipline (p. 63) section of the 2015 MIT Mind and

Hand Book, VII (2), states:

The Institute's mission encourages students to explore in order to advance knowledge at the highest level. It also expects its students to uphold the highest standards of respect, integrity, and civility. With this context, the Committee on Discipline (COD) was created to resolve complaints of alleged violations of policies and/or community standards by a student or former student in a way that is objective and educational, not legalistic or adversarial.

The Rules and Regulations of the COD govern how cases of alleged misconduct by student shall be resolved. The rules are available online at http://cod.mit.edu and in print from the Office of Student Citizenship, W20-507, 617-253-3276, citizenship@mit.edu.

20.     The Policies Regarding Student Behavior, Sexual Misconduct (p. 27) section of the

2015 MIT Mind and Hand Book, II (18), states:

The Massachusetts Institute of Technology is committed to the principle of equal opportunity in education and employment. The Institute does not discriminate against individuals on the basis of race, color, sex, sexual orientation, gender identity, religion, disability, age, genetic information, veteran status, ancestry, or national or ethnic origin in the administration of its educational policies, admissions policies, employment policies, scholarship and loan programs, and other Institute administered programs and activities, but may favor US citizens or residents in admissions and financial aid.

21.     Title IX of the Education Amendments Act of 1972 provides in relevant part that

"[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be

denied the benefits of, or be subjected to discrimination under any education program or activity

receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX applies to all public and

private educational institutions that receive federal funds, including colleges and universities. MIT

is a recipient of federal funds and is therefore bound by Title IX and its regulations.

22.    On April 4, 2011, the Office for Civil Rights ("OCR") of the U.S. Department of Education ("DOE") sent a "Dear Colleague Letter" to colleges and universities (hereinafter referred to as the "April 2011 Dear Colleague Letter"). The "April 2011 Dear Colleague Letter," while now revoked, was in effect when MIT's disciplinary procedures were put in place and the alleged sexual assault occurred in this case. Before the 2011 Dear Colleague Letter, colleges and universities generally did not use its disciplinary procedures to adjudicate sexual misconduct cases and certainly not in the manner and frequency that they have since the issuance of the April 2011 Dear Colleague Letter. The April 2011 Dear Colleague Letter thus provides a necessary set of background facts to this action: http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html.

23.    Although the April 2011 Dear Colleague Letter marked a substantial change in OCR's position on how schools should handle disciplinary proceedings under Title IX, OCR did not conduct the public notice and comment process required for proposed regulations. See 5 U.S.C. § 553. The 2011 Dear Colleague Letter (p. 1) defined discrimination on the basis of sex to include sexual harassment of students, which was defined to include acts of sexual violence. The April 2011 Dear Colleague Letter provided that, in order to comply with Title IX, colleges and universities must have prompt procedures to investigate and resolve complaints of sexual misconduct.

24.    The press release announcing the April 2011 Dear Colleague Letter stated that it was "the first specifically advising schools, colleges and universities that their responsibilities under Title IX include protecting students from sexual violence" and that it included "new steps to help our nation's schools, universities and colleges end the cycle of sexual violence on campus." The press release made clear the focus was on protecting women: it stated that despite past progress

9

"the threat of violence and abuse continues for a new generation of women"; it lauded the "unprecedented coordination and cooperation across the federal government to combat violence against women"; it stated that one in five women "will be a victim of sexual assault during college" (a statistic that would later be thoroughly discredited that, if had it been true, would represent triple the rate of rape for the same demographic in war-torn Somalia)[2]; and it highlighted "the Administration's commitment to raising awareness and promoting policies to prevent sexual violence against women of all ages."

25.     The April 2011 Dear Colleague Letter itself explicitly focused on protection of women and effectively equated "victims" and "complainants" in sexual misconduct proceedings as women who must receive preferential treatment. For instance, the April 2011 Dear Colleague Letter: (i) stated -- incorrectly -- that "1 in 5 women are victims of completed or attempted sexual assault while in college" (p. 2); (ii) warned that "the majority of campus sexual assaults occur when women are incapacitated, primarily by alcohol" (p. 2); (iii) suggested educational institutions seek grants from the U.S. Department of Justice's Office on Violence against Women, which require institutions to "develop victim service programs and campus policies that ensure victim safety, [and] offender accountability . . ." (p. 19); and (iv) warned educational institutions that they must "never" view the "victim at fault for sexual violence" if she has been using "alcohol or drugs" and asks "schools to consider" providing students who violate alcohol or drug policies with amnesty if they allege they were sexually assaulted while consuming alcohol or drugs (p. 15).

26.     The 1 in 5 "statistic" cited by the April 2011 Dear Colleague Letter came from a disputed 2007 study, which was based on an overly broad definition of sexual assault and which, according to the study authors, was not derived from a nationally representative sample. Schow,

---

[2] Somalia Human Development Report, UN Development Programme, 2012, Table A4-28.

"No, 1 in 5 Women Have Not Been Raped on College Campuses," Washington Examiner, August 13, 2014, http://www.washingtonexaminer.com/no-1-5-women-have-not-been-raped-on-college-campuses/articles/2551980.

27.    A Bureau of Justice Statistics (DOJ) study, 1995-2013, published in December 2014 found that college-age female students on campus were less likely to be victims of sexual assault than non-students and the real number of college women assault victims is .03 in 5; these statistics do not support the notion of a "crisis" of violence against women. Rape and Sexual Assault Victimization among College Age Females, 1995-2013 (Special Report), U.S. Department of Justice, December 2014, http://www.bjs.gov.content/pub/pdf/ravcaf9513.pdf.

28.    The April 2011 Dear Colleague Letter, in order to provide females what was unjustified preferential treatment, imposed numerous mandates that inherently made it more difficult for males accused of sexual misconduct to defend themselves. The "April 2011 Dear Colleague Letter" (pp. 10-11) required schools to adopt a relatively low burden of proof -- the preponderance of the evidence ("more likely than not") -- in cases involving sexual misconduct, including sexual assault. Several colleges had been using "clear and convincing," and some, like Stanford University, applied the criminal standard, "beyond a reasonable doubt." The April 2011 Dear Colleague Letter (p. 12) also strongly discouraged allowing cross-examination of complainants because it "may be traumatic or intimidating" to the alleged victim. The "April 2011 Dear Colleague Letter" stated (p. 12) that schools should give both parties the right to appeal a decision, which amounts to double jeopardy for an accused student. After the April 2011 Dear Colleague Letter was published, schools changed their sexual assault and sexual harassment policies and procedures. Additionally, the "April 2011 Dear Colleague Letter" stated (pp. 15-16)

that schools should "minimize the burden on the complainant," transferring alleged perpetrators, if necessary, away from shared courses or housing.

29.     On April 29, 2014, the OCR published a document signed by then Assistant Secretary of Education in charge of the OCR Catherine E. Lhamon ("Secretary Lhamon") and bearing the title "Questions and Answers on Title IX and Sexual Violence." (the "2014 Q&A"): http://www2.ed/gov./about/offices/list/ocr/docs/qa-201404-title-ix.pdf. The 2014 Q&A continued OCR's effort to restrict students' ability to defend themselves by reducing or eliminating the ability to expose credibility flaws in the allegations made against them. For example, OCR's 2014 Q&A states that schools: (i) "must not require a complainant to be present" at sexual misconduct disciplinary hearings" (p. 30); (ii) may decide to eliminate all opportunities for "cross-examination" (p. 31); and (iii) must avoid "revictimization" by minimizing the number of times a victim is interviewed so "complainants are not unnecessarily required to give multiple statements about a traumatic event" (pp. 30, 38).

30.     Neither OCR's April 2014 Q&A nor the April 2011 Dear Colleague Letter were subject to notice-and-comment rule-making, yet both the OCR's April 2014 Q&A and the April 2011 Dear Colleague Letter constituted substantive decision-making.

31.     The Obama Administration, through the DOE and OCR, treated the April 2011 Dear Colleague Letter as binding on regulated parties for all practical purposes and thus has pressured colleges and universities to aggressively pursue investigations of sexual assaults on campuses. Then Secretary Lhamon, Assistant Secretary of the Department of Education ("DOE") in charge its Office for Civil Rights ("OCR"), delivered what was treated as marching orders by colleges and universities.

32.    In February 2014, Assistant Secretary Lhamon told college officials attending a conference at the University of Virginia that schools need to make "radical" change. According to the Chronicle of Higher Education, college presidents said afterward that there were "crisp marching orders from Washington." "Colleges Are Reminded of Federal Eye on Handling of Sexual-Assault Cases," Chronicle of Higher Education, February 11, 2014.

33.    In June 2014, then Assistant Secretary Lhamon testified at a Senate Hearing in that "some schools are still failing their students by responding inadequately to sexual assaults on campus. For those schools, my office and this Administration have made it clear that the time for delay is over." Assistant Secretary Lhamon stated at the Senate Hearing in June 2014 that "we do" expect institutions to comply with the 2011 Dear Colleague Letter. Assistant Secretary Lhamon told the Senate Committee, "This Administration is committed to using all its tools to ensure that all schools comply with Title IX . . ." She further told the Committee: "If OCR cannot secure voluntary compliance from the recipient, OCR may initiate an administrative action to terminate and/or refuse to grant federal funds or refer the case to the DOJ to file a lawsuit against the school." Assistant Secretary Lhamon additionally stood behind the "April 2011 Dear Colleague Letter."

34.    To revoke federal funds -- the ultimate penalty -- is a powerful tool because educational institutions receive billions of dollars a year from the federal government. Anne Neal of the American Council of Trustees and Alumni was quoted as follows: "There is a certain hysteria in the air on this topic, . . . It's really a surreal situation, I think." She explained that "schools are running so scared of violating the civil rights of alleged victims that they end up violating the due process rights of defendants instead." "How Campus Sexual Assaults Came To Command New Attention," NPR, August 12, 2014.

35.    On October 27, 2014, MIT then Chancellor Cynthia Barnhart, a woman, issued a

letter to the MIT community reflecting the mentality of the April 2011 Dear Colleague Letter:

> In response to President Reif's charge that we take action to combat sexual assault
> at MIT, last spring my office conducted an online survey to understand the extent
> and effects of sexual misconduct in our community. I write now to share what we
> have learned so far and explain the first round of actions we are taking in response.
>
> The survey we created is the first of its kind for our community: we sent it to all
> undergraduate and graduate students (10,831 people), and we asked extensive,
> detailed questions designed to bring clarity to a subject that is inherently sensitive
> and difficult. We launched the survey on April 27, 2014, two days before the White
> House Task Force called on all US colleges and universities to survey their students
> on these matters.
>
> We received survey replies from 3,844 – or 35% – of our students. Because the
> survey was not a random sample and was voluntary, and the topic of unwanted
> sexual behaviors is focused, we know the results reflect a degree of self-selection.
> Since it is impossible to tell how this may have altered the results, it would be a
> mistake to use these numbers to generalize about the prevalence of unwanted sexual
> behavior in the lives of all MIT students.
>
> Nevertheless, the survey clearly tells us that, like many other colleges and
> universities, we face a serious problem:
>
> The national conversation has focused on the widely cited statistic that 19% of
> undergraduate women, or one in five, experience rape or sexual assault under
> conditions of force, threat or incapacitation. At MIT, for those female
> undergraduates who responded to the survey, the comparable figure is nearly 17%.
>
> Our survey asked questions designed to capture not only sexual assault by force,
> threat of harm, or incapacitation due to alcohol or drugs, but also to uncover a
> broader picture of unwanted sexual behavior in our community. Of all the students
> who responded to the survey -- graduate and undergraduate, of all genders -- 539
> indicated that, while at MIT, they had experienced some type of unwanted sexual
> behavior, ranging from unwelcome verbal sexual conduct to rape, usually
> committed by someone they knew. Of those 539 respondents [to the survey], 284
> were undergraduate women.

36.    The referenced survey was conducted and analyzed by eight women and one male

administrator at MIT:  https://web.mit.edu/surveys/casatips/index.html.  The survey describes

various efforts that took place just before the time of John Doe's case, including having a dedicated

Title IX office, hiring two new staff members to address gender-based inequities, setting up task forces to investigate sexual misconduct, and conducting marketing campaigns to advertise resources for alleged sexual assault victims.

37.    With this mentality and approach, which included acceptance of a false statistic of 1 in 5 college women being subject to sexual assault, MIT proceeded vigorously to prosecute male students accused of sexual assault.  MIT Chancellor Cynthia Barnhart, during her tenure, took pride in her efforts with respect to what was called combatting sexual misconduct.

38.    The Obama era procedures, however, led to litigation challenging what colleges and universities were doing in sexual misconduct proceedings in unfairly treating male respondents in violation of Title IX. *See Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016) (Title IX complaint upheld of male plaintiff who had been a suspended student as a result of university sexual misconduct proceeding).

39.    In September 2017, the DOE took first steps toward restoring procedures that would provide basic fairness to both accusing and accused students in Title IX proceedings. Recognizing the harmful results of the April 2011 Dear Colleague Letter, then Secretary of Education Betsy DeVos observed that "[n]o school or university should deprive any student of his or her ability to pursue their education because the school fears shaming by—or loss of funding from— Washington," that "no student should be forced to sue their way to due process," and that "[o]ne person denied due process is one too many." On September 7, 2017, then Department of Education Secretary Betsy DeVos denounced the campus sexual misconduct proceedings as denying due process in a manner that is wholly un-American: www.ed.gov/news/speeches/secretary-devos-prepared-remarks-title-ix-enforcement.

40.     Then, on September 22, 2017, the Department of Education announced that it was withdrawing the 2011 Dear Colleague Letter and the 2014 Questions & Answers on Title IX Sexual Violence, noting in part the criticism of those documents for placing "improper pressure upon universities to adopt procedures that do not afford fundamental fairness" and are "overwhelmingly stacked against the accused." This withdrawal effected a reversion to 2001 Department of Education guidance, which reads in relevant part: "The Constitution also guarantees due process to students in public and State-supported schools who are accused of certain types of infractions. The rights established under Title IX must be interpreted consistent with any federally guaranteed due process rights involved in a complaint proceeding."

41.     Until Title IX regulations were issued in May 2020, many schools and universities continued to adhere to its Obama era procedures, including MIT. Meanwhile, then DOE Secretary DeVos had the DOE conduct notice and comment procedures of the Administrative Procedures Act on Title IX procedures for the sexual misconduct proceedings conducted by colleges and universities. According to then Secretary DeVos, one influential decision was *Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019), in which then Seventh Circuit Judge Amy Coney Barrett for a three-woman panel upheld a Title IX and due process complaint of a male student who had been a suspended student as a result of university sexual misconduct proceeding. After the Title IX regulations were finally issued in May 2020 to take effect in August 2020, colleges and universities did change their procedures. But all of those developments in Title IX post-dated the events of this case, which occurred in the 2013-2016 time period when the April 2011 Dear Colleague Letter was in effect.

B.    **John Doe's Disciplinary Case.**

42.    During the 2013-2014 school year at MIT, when John Doe and Jane Roe both were in their first year at MIT, John Doe and Jane Roe had a personal relationship that included their having regular sexual intercourse multiple times every week. It was the first serious relationship that John Doe had in his life; previously, he had been a virgin.

43.    Over the summer of 2014, Jane Roe broke off the relationship, but when the two returned to MIT for the 2014-2015 school year, they resumed seeing and interacting with each other and spending time together because they were in a number of the same classes and Jane Roe would go over to John Doe's residence hall room and get assistance with her class work, as Jane Roe struggled in her classes. John Doe hoped his assistance to Jane Roe would rekindle the romance of the relationship because he loved her. According to John Doe, in the first semester of the 2014-2015 school year, even though the two had broken up, John Doe and Jane Roe had consensual sexual intercourse on average about once a month and often at the initiation of Jane Roe. John Doe and Jane Roe agree that in November 2014, John Doe and Jane Roe had consensual sexual intercourse.

44.    On the night of February 26-27, 2015, Jane Roe went to John Doe's residence hall room with her laptop computer because John Doe was the only person whom she knew could fix the problems she was having. Jane Roe spent two to three hours in John Doe's room as he worked on her computer. During the course of the evening, John Doe kissed Jane Roe on her cheek or forehead a number of times.

45.    Because of the wintry weather conditions outside and because Jane Roe was tired from her studies, it was discussed and then agreed by Jane Roe and John Doe that Jane Roe would

stay the night in John Doe's room and sleep in his bed, which she did. John Doe joined her, and the two "spooned" while they both slept.

46.     In the early morning hours of February 27, 2015, John Doe woke up, used the bathroom and then when he returned to the bed and fell asleep for two hours. He woke up lying on his back and found Jane Roe resting her body on top of his. Jane Roe pushed her body into John Doe's, demonstrating a desire to engage in sexual intercourse. John Doe engaged in foreplay with Jane Roe, which she breathed heavily and made noises, reflecting that she was enjoying the pleasure of the foreplay. John Doe proceeded to remove items of Jane Roe's clothing with Jane Roe positioning herself to make such removal easier, for which she made noises in approval, and to give oral sex to Jane Roe and then to have sexual intercourse. Throughout the removal of clothing and sexual intercourse, John Doe observed Jane Roe as fully conscious, alert, and with wide open eyes. In fact, Jane Roe made moaning sounds, reflecting her enjoyment in the sexual act.

47.     Shortly after, Jane Roe asked John Doe what they did. John Doe, astonished at Jane Roe's question, stated they had sex. When Jane Roe left John Doe's room, Jane Roe did not appear upset at all. The only time the subject of the night of February 26-27, 2015 came up thereafter was in the following April 2015 at Jane Roe's sorority where John Doe went at Jane Roe's request to fix Jane Roe's computer; Jane Roe said to John Doe that the sex they had when she was asleep was not okay. But John Doe and Jane Roe had many interactions in 2015 after the night of February 26-27, 2015, both before and after the brief comment in April 2015 at Jane Roe's sorority, and despite many further interactions between John Doe and Jane Roe, John Doe heard nothing from Jane Roe about the night of February 26-27, 2015, until Jane Roe filed her university disciplinary complaint the following January 2016, nine months later.

48.    On January 26, 2016, John Doe's former girlfriend Jane Roe filed a complaint with MIT alleging nonconsensual sexual contact and nonconsensual sexual intercourse by John Doe based on one night involving sexual intercourse on February 27, 2015, almost a year earlier than when the complaint was filed by Jane Roe with MIT 's Title IX Office.

49.    Upon the filing of Jane Roe's disciplinary complaint, MIT's Title IX office launched an investigation, interviewing John Doe, Jane Roe and other students and reviewing various documents. The two investigators were women who expressed radical feminist attitudes. One of the investigators, who after graduating from law school, worked as a Victim Advocate at a Women's Center and then was employed as a Title IX investigator at MIT.

50.    At the first meeting with the investigators, the Title IX investigator specifically advised John Doe not to hire an attorney, stating that an attorney would not be any help since they would not be able to attend or speak at the investigation meetings and would be a waste of money. Instead, the Title IX investigator said they could provide a list of "trained" MIT advisors. The advisor that John Doe selected turned out to be a grad student advisor who contributed nothing to helping John Doe. At a second meeting with the investigators, the investigators spoke to John Doe in a manner indicating that they presumed John Doe not to be truthful, stating that they had "caught him" and asked him to clarify supposed contradictions in his account of the events of the morning which didn't exist.

51.    At the same time, the investigators did not explore any of the contradictions contained within complainant Jane Roe's story. Instead, during the course of the investigation, MIT's investigators on its own initiative asserted a second charge against John Doe -- sexual harassment by John Doe based on the period of time when John Doe was Jane Roe's boyfriend in the 2013-2014 school year, two years prior to Jane Roe's filing of the complaint with MIT's Title

IX Office. The MIT investigators conducted themselves as a roving commission seeking to ferret out supposed male sexual misconduct.

52.    Radical feminist anti-male bias on the MIT campus guided the investigation report's conclusions, which included that the female complainant's story was presumed to be true (which the evidence showed it wasn't) and that John Doe was presumed not to be truthful in order to avoid being found responsible (which the evidence showed wasn't the case). The investigators erroneously found John Doe responsible for (i) nonconsensual sexual contact and nonconsensual sexual intercourse based on the sex that occurred on February 27, 2015 and (ii) sexual harassment based on the period of time when John Doe was Jane Roe's boyfriend in the 2013-2014 school year. John Doe was not allowed to submit a written rebuttal to the investigation report.

53.    On April 25, 2016, MIT held a hearing before a panel of three professors, two of whom were women. The hearing panel had the investigation report but not a rebuttal from John Doe to the investigation report. At the hearing, John Doe denied responsibility. Only two days later, on April 27, 2016, the Chair of the MIT Committee on Discipline sent John Doe a letter informing him that MIT found him (erroneously) responsible for (i) nonconsensual sexual contact and nonconsensual sexual intercourse on February 27, 2015 and (ii) for sexual harassment during the time of the 2013-2014 school year and that the sanction was expulsion -- in effect, rubber stamping the investigation report.

54.    John Doe filed with MIT an appeal of the sanction, arguing that the evidence did not support the panel's findings and did not support the sanction of expulsion. As alleged above, John Doe had been a virgin before his relationship with Jane Roe. John Doe's appeal included the following:

> During the investigation, I explained . . . that I had effective consent because of [Jane Roe]'s actions and sounds before and during the event. These include her

responding to my question about returning to working on PSets (suggesting that she was, in fact, awake), her pushing her rear end into me while we were spooning, her lifting her rear end so that I could pull off her pants, and her lifting her shoulders so I could remove her bra. She also consistently made moaning sounds during the entire process, starting from the very beginning and continuing until it was over.

The rationale used by the COD [Committee on Discipline] and Title IX investigation in finding me responsible for misconduct is that a reasonable person should know that these actions do not constitute effective consent, because a person who is asleep can perform any of these actions. While I agree that this is true, it less likely that a person will perform *all* of these activities, within minutes of each other, as had happened that morning. Furthermore, what happened that morning was not unlike the way we initiated sex in the past. In the past, we never explicitly asked for consent, it was always inferred by actions and sounds that we made, such as moaning to indicate enjoyment and moving to assist with undressing. Therefore, I believe that, given the context of our previous sexual experiences, the way [Jane Doe] was moving on the bed, the sounds that she was making, and that all these were occurring at the same time, a reasonable person could also have concluded that [Jane Doe] was giving effective consent.

. . . [H]ad I known that [Jane Roe] was in fact asleep, I would certainly not have engaged in sexual activities with her. However, as I said in the previous paragraph, I truly thought I had effective consent. . . .

I feel that the COD [Committee on Discipline]'s decision to sanction me to expulsion is extreme. . . :

> 1)     Our sexual relationship never required verbal confirmations, and neither does MIT's policy. We have had sex hundreds of times before this incident, and many of them developed the same way as it had that morning. Based on this, I do not think it was unreasonable for me to have concluded that I had effective consent.

> 2)     There is no "indication that similar behavior could occur again," unlike what the COD [Committee on Discipline] is assuming. Since learning [Jane Roe]'s feelings after the incident, I have learned to always made sure to explicit ask for consent with my current girlfriend and will continue to do so for the rest of my life. This incident has shown me that it is possible to misinterpret signals, and doing so can have drastic consequences. To avoid anything like this from happening in the future, I will make sure to get explicit consent.

> 3)     One of the COD [Committee on Discipline]'s concerns and assumptions is that, even now, I "have not taken responsibility for [your] behavior or acknowledged the impact of [your] actions on the complainant." I want to point out that the notion of taking responsibility is more nuanced

than the yes or no answer that the committee was expecting me to give. As explained above, I truly thought I had effective consent. I was willing to take responsibility for making a terrible judgement call, but that is different from taking responsibility for sexual assault, which is what the COD [Committee on Discipline] was asking. Under MIT policy, sexual assault not only includes whether effective consent was given, but also whether a reasonable person would have perceived effective consent. I believe that there was sufficient evidence, given the context of hundreds of sexual experiences with [Jane Roe], to have assumed effective consent. Also, I did acknowledge the impact of my actions on [Jane Doe] to my advisor at the hearing, but I did not think the hearing was the right place to express those thoughts (I had been given the impression the hearing and investigations were purely factual).

55.     On May 13, 2016, MIT then Chancellor Cynthia Barnhart sent a letter to John Doe denying his appeal, stating without explanation that the responsibility finding was not substantially against the weight of the evidence and that expulsion was within the range of permissible sanctions.

56.     John Doe was thus expelled, just short of his expected graduation from MIT, with only final exams and final projects to complete. Based on John Doe's historic excellent academic performance at MIT, John Doe would have passed his final exams and projects with flying colors.

57.     John Doe has suffered and will continue to suffer significant damages as a result of MIT's finding of responsibility and expulsion.

58.     But for MIT's unwarranted sanction of expulsion, John Doe would have graduated with a diploma from MIT, a prestigious institution known for its academic rigor.

59.     As a result of MIT's flawed investigation, and resulting erroneous decision to expel John Doe, he has suffered from severe emotional distress and anxiety.

60.     Moreover, by marring John Doe's academic record with this expulsion, John Doe will experience reputational damage for years to come.

61.   This action has therefore been brought to rectify the breach of contract and promissory estoppel that has greatly damaged John Doe, including by the denial of the diploma John Doe had all but earned.

**FIRST CAUSE OF ACTION:**
**State Law Breach of Contract**

62.   John Doe repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

63.   An express and/or implied contract under Massachusetts law was created when John Doe accepted an offer of admission to MIT and paid the tuition and fees.

64.   It is well-established that the relationship between a student and his educational institution is contractual in nature, with the terms of contract established by the student handbook and other related policies. *See Doe v. W. New England Univ.,* 228 F. Supp. 3d 154, 169 (D. Mass. 2017); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561, 593 (D. Mass. 2016).

65.   The 2015 MIT Mind and Hand Book has sections for sexual assault awareness and resources for alleged sexual misconduct complainants, but not for sexual misconduct respondents.

66.   The Rules and Regulations of the COD govern how cases of alleged misconduct by student shall be resolved. Among other things, the burden of proof is on the University to show that a violation has occurred before any sanctions are imposed.

67.   MIT breached its contract with John Doe when it failed to conduct an objective, impartial process and instead conducted a legalistic and adversarial process against a male respondent over events that involved a young man and young woman who had been in a personal relationship.  With respect to the allegation of nonconsensual sexual penetration, the events were 1¼ years old. With respect to the allegations of the nonconsensual sexual contact, the events were 2 years old.

68.     MIT breached its contract with John Doe when it did not adhere to the requirement of the burden of proof when presuming the female complainant's story was true (which the evidence showed it wasn't) and presuming John Doe was not truthful in order to avoid being found responsible (which the evidence showed wasn't the case).

69.     MIT breached its contract with John Doe when it did not adhere to the requirement of the burden of proof when the investigators and Hearing Panel found John Doe responsible for (i) nonconsensual sexual contact and nonconsensual sexual intercourse based on the sex that occurred on February 27, 2015 and (ii) sexual harassment based on the period of time when John Doe was Jane Doe's boyfriend in the 2013-2014 school year -- effectively disregarding the facts and circumstances presented to the investigators and the hearing panel by John Doe showing consent on the part of his former girlfriend with whom even after their break up he had continued to have sexual intercourse without complaint and indeed initiated by Jane Roe.

70.     MIT breached its contract with John Doe when it failed to afford John Doe an opportunity to submit a rebuttal to the investigation report. Without that rebuttal, the hearing panel had only the investigator report in writing and relatively quickly rubber stamped its conclusions.

71.     MIT breached its contract with John Doe when it permitted gender bias to be a motivating factor behind the expulsion imposed upon John Doe based on the allegations of the female Complainant Jane Roe concerning an alleged incident in February 2015 about which Complainant Jane Roe did not complain to the police ever and based on the charge not originally made by Jane Roe but developed by the investigators that John Doe had engaged in sexual harassment of sexual harassment during the period of time when John Doe was Jane Roe's boyfriend in the 2013-2014 school year. Gender bias is implicit in the imposition of an expulsion based on the female's allegations that were treated as presumptively true -- despite the lack of a

timely complaint, despite the lack of medical and physical evidence, and despite the contradictions in the female's own story. MIT maintained a female victim oriented disciplinary process for sexual misconduct that has been anti-male in operation because almost all complainants are female and almost all respondents are male and because MIT has provided ample resources to female complainants but none to male respondents.

72.     MIT breached its contract with John Doe by discriminating against John Doe on the basis of sex in violation of The Policies Regarding Student Behavior, Sexual Misconduct (p. 27) section of the 2015 MIT Mind and Hand Book, II (18), which states that MIT "is committed to the principle of equal opportunity in education and employment" and "does not discriminate against individuals on the basis of race, color, sex. . . ."

## SECOND CAUSE OF ACTION:
### Promissory Estoppel

73.     John Doe repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

74.     The 2015 MIT Mind and Hand Book contains unambiguous representations and promises that MIT should have reasonably expected to induce action or forbearance on the part of John Doe.

75.     MIT expected or should have expected John Doe to accept its offer of admission and choose not to attend other colleges based on its express and implied promises including, but not limited to: the opportunity to attain his educational objectives, to have his health, safety, welfare and human rights protected, to have any claims brought against him under the Policies be heard by an impartial and objective panel, to be free from discrimination, and to have complaints resolved impartially and promptly.

76. John Doe reasonably and foreseeably relied to his detriment on these express and implied promises and representations made by MIT, by choosing to attend MIT rather than other schools of equal caliber.

77. These express and implied promises and representations made by MIT must be enforced to prevent substantial injustice to John Doe.

78. Based on the foregoing, MIT is liable to John Doe based on promissory estoppel.

79. As a direct and proximate result of the above conduct, John Doe sustained tremendous damages, including, without limitation, emotional distress, damages to reputation, psychological damages, loss of educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

80. As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**THIRD CAUSE OF ACTION:**
**Breach of Contract/Common Law: Denial of**
**Basic Fairness/Arbitrary and Capricious Decision-Making**

81. John Doe repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

82. Massachusetts courts have held that a private university may not act "arbitrarily or capriciously" in disciplining a student. *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561, 600 (D. Mass. 2016).

83. "A covenant of good faith and fair dealing is implied in ever contract and a university has an obligation to adhere to this covenant when dealing with students." *Doe v. Harvard Univ.,* 462 F. Supp. 3d at 66 (citing *Doe v. Trs. of Boston Coll.,* 892 F.3d 67, 87 (1st Cir. 2018)).

84.    Specifically, "[s]chool disciplinary hearings must be "conducted with basic fairness." *Cloud v. Trustees of Boston University*, 720 F.2d 721, 725 (citing *Coveney v. President & Trustees of Holy Cross College,* 445 N.E.2d 136, 139 (1983); *Schaer v. Brandeis University*, 432 Mass. 474, 481, 735 N.E.2d 373, 380 (2000).

85.    Consistent with the implied covenant of good faith and fair dealing, the 2015 MIT Mind and Hand Book states its commitment to "resolve complaints of alleged violations" in a way that is "objective and educational" and not adversarial.

86.    MIT had a duty to ensure that proceedings against John Doe were conducted in good faith and basic fairness.

87.    While "'[b]asic fairness' is an uncertain and elastic concept, and there is little case law to serve as guideposts in conducting the fairness inquiry" (*Doe v. Brandeis Univ.,* 177 F. Supp. at 601), "[i]n this context, at least, there are two principal threads to the "fairness" inquiry. The first is procedural fairness—that is, whether the process used to adjudicate the matter was sufficient to provide the accused student a fair and reasonable opportunity to defend himself. The second is substantive fairness—that is, even if the procedure was fair, whether the decision was unduly arbitrary or irrational, or tainted by bias or other unfairness. *Doe v. Brandeis,* 177 F.Supp. 3d at 602.

88.    MIT breached this duty of good faith and basic fairness when it failed to investigate and adjudicate the allegations in an objective and fair manner. By way of example and not limitation:

    a.    From the onset of the investigation, the investigators strongly dissuaded John Doe from hiring an attorney to serve as his advocate, thus stripping of his ability to put forth his best defense to combat the charges.

27

b.      The investigators displayed rudeness and hostility towards John Doe during his interview.

c.      The investigators presumed John Doe was not telling the truth.

d.      The hearing panel rubber-stamped the investigation report.

89.     Additionally, MIT did not afford Doe any opportunity at all to submit a rebuttal to the investigation report. Fairness warrants that the accused should have an opportunity to submit a response to any such report that would result in a sanction as severe as expulsion.

90.     MIT further breached this duty when it forced John Doe to appear for a hearing, without an attorney advisor, after purposely dissuading him from doing so.

91.     MIT further breached this duty when it found John Doe responsible for sexual misconduct, and expelled him, despite the substantial lack of evidence supporting such a finding and John Doe's vehement assertions of innocence.

92.     Lastly, MIT denied Doe the right to an effective appeal by unreasonably circumscribing the grounds for appeal. ("Conspicuously absent from that list is the ability to appeal on the ground that the Special Examiner's decision was not supported by the evidence, or that it was otherwise unfair, unwise, or simply wrong." (*Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561, 607 (D. Mass. 2016).)

93.     In his appeal, among the procedural errors defined, John Doe described that the rationale utilized by MIT in dispensing the decision against him was wrong and illogical. John Doe highlighted that he indeed had affirmative consent, articulating exactly how so. He further reiterated that this in fact met the 2015 Mind and Hand Book's definition of consent.

94.     MIT Chancellor Cynthia Barnhart denied his appeal on May 13, 2016, with a perfunctory explanation that did not address the flawed rationale that resulting in the finding of responsibility and excessive sanction against John Doe.

95.     Based on the aforementioned facts and circumstances, MIT breached its express and/or implied contract with John Doe because MIT breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with John Doe. MIT failed its duty of good faith and fair dealing when it committed the procedural and substantive errors complained of above, meted out a disproportionate sanction and with a flawed process, found John Doe responsible despite the lack of evidence in support of Jane Roe's allegations of sexual misconduct.

96.     John Doe is entitled to recover damages for MIT's breach of the express and/or implied contractual obligations described above. As a direct and proximate result of the above conduct, John Doe sustained tremendous damages, including, without limitation, emotional distress, damages to reputation, psychological damages, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

97.     As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**PRAYER FOR RELIEF**

**WHEREFORE,** for the foregoing reasons, John Doe demands judgment as follows:

(i)     on the first cause of action for breach of contract, a judgment against MIT awarding to John Doe damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career

prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements; and

(ii)    on the second cause of action for promissory estoppel, a judgment against MIT awarding to John Doe damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements, and

(iii)    on the third cause of action for breach of contract/common law: denial of basic fairness/arbitrary and capricious decision-making, a judgment against MIT awarding to John Doe damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements; and

(iv)    awarding John Doe such other and further relief as the Court deems just, equitable and proper.

## **JURY DEMAND**

Plaintiff John Doe demands a trial by jury of all issues presented herein that are triable by a jury.

**Dated: December 16, 2021**

                                        **Respectfully submitted,**
                                        **NESENOFF & MILTENBERG, LLP**


                                        **By:** *Philip A. Byler*
                                        **Philip A. Byler, Esq.**
                                        (***pro hac vice forthcoming***)
                                        **Andrew T. Miltenberg, Esq.**
                                        (***pro hac vice forthcoming***)
                                        **363 Seventh Avenue, Fifth Floor**
                                        **New York, New York 10001**
                                        **(212) 736-4500**
                                        **pbyler@nmllplaw.com**
                                        **amiltenberg@nmllplaw.com**


                                        */s/ Tara J. Davis*
                                        **Tara J. Davis (BBO # 675346)**
                                        **Regina Federico, Esq. (BBO # 700099)**
                                        **NESENOFF & MILTENBERG, LLP**
                                        **101 Federal Street, 19th Floor**
                                        **Boston, MA 02110**
                                        **212-736-4500**
                                        **tdavis@nmllplaw.com**
                                        **rfederico@nmllplaw.com**


                                        *Attorneys for Plaintiff John Doe*

JS 44 (Rev. 10/20)

Case 1:21-cv-12060-RGS   Document 1-1   Filed 12/16/21   Page 1 of 1

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. **Title of case (name of first party on each side only)** John Doe v. Massachusetts Institute of Technology

2. **Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).**

   [ ]   **I.**   160, 400, 410, 441, 535, 830*, 835*, 850, 880, 891, 893, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ]   **II.**   110, 130, 190, 196, 370, 375, 376, 440, 442, 443, 445, 446, 448, 470, 751, 820*, 840*, 895, 896, 899.

   [ ]   **III.**   120, 140, 150, 151, 152, 153, 195, 210, 220, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 367, 368, 371, 380, 385, 422, 423, 430, 450, 460, 462, 463, 465, 480, 485, 490, 510, 530, 540, 550, 555, 560, 625, 690, 710, 720, 740, 790, 791, 861-865, 870, 871, 890, 950.
      *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3. **Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.**

   N/A

4. **Has a prior action between the same parties and based on the same claim ever been filed in this court?**
   YES [ ]      NO [ ]

5. **Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)**
   YES [ ]      NO [ ]

   **If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?**
   YES [ ]      NO [ ]

6. **Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?**
   YES [ ]      NO [ ]

7. **Do all of the parties in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? -  (See Local Rule 40.1(d)).**
   YES [ ]      NO [ ]

   **A.**   **If yes, in which division do all of the non-governmental parties reside?**
   Eastern Division [ ]      Central Division [ ]      Western Division [ ]

   **B.**   **If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?**
   Eastern Division [ ]      Central Division [ ]      Western Division [ ]

8. **If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)**
   YES [ ]      NO [ ]

**(PLEASE TYPE OR PRINT)**
**ATTORNEY'S NAME** Tara J. Davis, Esq.
**ADDRESS** 101 Federal Street, 19th floor, Boston, MA 02110
**TELEPHONE NO.** (617) 209-2188

**(CategoryForm11-2020.wpd )**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | Civil Action No:  1:21-cv-12060 |
| MASSACHUSETTS INSTITUTE OF | : | |
| TECHNOLOGY, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S *EX PARTE* MOTION TO PROCEED UNDER PSEUDONYM**

The undersigned attorneys hereby move this Court to allow Plaintiff in the above-referenced action to proceed under the pseudonym John Doe, for the reasons set forth in the attached Plaintiff's Memorandum of Law in Support of Plaintiff's *Ex Parte* Motion to Proceed Under Pseudonym, and the Declaration of Tara J. Davis, Esq. In Support of Plaintiff's *Ex Parte* Motion to Proceed Under Pseudonym.

**Dated: Boston, Massachusetts**
**December 16, 2021**

Respectfully submitted,

**NESENOFF & MILTENBERG, LLP**
***Attorneys for Plaintiff John Doe***

**By: /s/ *Tara J. Davis***
**Philp A. Byler, Esq. (*pro hac vice forthcoming*)**
**Andrew T. Miltenberg, Esq. (*pro hac vice forthcoming*)**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**pbyler@nmllplaw.com**
**amiltenberg@nmllplaw.com**

**Tara J. Davis, Esq. (BBO #675346)**
**Regina M. Federico, Esq. (BBO #700099**
**101 Federal Street, Nineteenth Floor**
**Boston, Massachusetts 02110**
**(617) 209-2127**
**tdavis@nmllplaw.com**
**rfederico@nmllplaw.com**

### <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

Plaintiff, through his undersigned counsel, was not able to confer with opposing counsel concerning their request for the filing of this matter under pseudonyms, as this motion is being filed *ex parte*, contemporaneous with the filing of Plaintiff's. As such, Plaintiff is not yet aware of who will be serving as defense counsel.

<u>*/s/ Tara J. Davis*</u>
Tara J. Davis, Esq. (BBO #675346)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | Civil Action No:  1:21-cv-12060 |
| MASSACHUSETTS INSTITUTE OF | : | |
| TECHNOLOGY, | : | |
| | : | |
| Defendant. | : | |

**DECLARATION OF TARA DAVIS, ESQ. IN SUPPORT OF**
**PLAINTIFF'S *EX PARTE* MOTION TO PROCEED UNDER PSEUDONYM**

**TARA DAVIS, ESQ**., hereby declares subject to the penalties of perjury pursuant to 28

U.S.C. § 1746:

1.      I am admitted to practice in the courts of the Commonwealth of Massachusetts and

am a member of the Bar of Commonwealth of Massachusetts and District of Massachusetts.  I am

a partner with the law firm of Nesenoff & Miltenberg, LLP, attorneys for Plaintiff John Doe

("Plaintiff"), heading the firm's Boston office.

2.      I submit this declaration in support of Plaintiff's *Ex Parte* Motion to Proceed Under

Pseudonym.

3.      This breach of contract, promissory estoppel and breach of contract/common law

denial of basic fairness/arbitrary and capricious decision-making suit is brought on behalf of

Plaintiff John Doe, who was expelled from MIT within a month of graduation for alleged sexual

misconduct that purportedly occurred over a year earlier and that he did not commit; the expulsion

was issued after an unfair process not in compliance with the MIT Student Code's commitment to

non-discrimination based on sex.

4.      In January 2016, John Doe was a third-year student at MIT on a three-year program. On January 26, 2016, John Doe's former girlfriend "Jane Roe" (a pseudonym) filed a complaint with MIT alleging nonconsensual sexual contact and nonconsensual sexual intercourse by John Doe based on one night involving sexual intercourse on February 27, 2015, almost a year earlier than when the complaint was filed by Jane Roe with MIT 's Title IX Office. During the course of the investigation, MIT's investigators on its own initiative asserted a second charge against Doe, for sexual harassment, arising from the period of time when Doe was Roe's boyfriend in the 2013-2014 school year, two years prior to Roe's filing of the complaint with MIT's Title IX Office.

5.      Upon the filing of Jane Roe's disciplinary complaint, MIT's Title IX office launched an investigation, interviewing John Doe, Jane Roe and other students and reviewing various documents. Radical feminist anti-male bias on the MIT campus guided the investigation report's conclusions, which included that John Doe was responsible for (i) nonconsensual sexual contact and nonconsensual sexual intercourse based on the sex that occurred on February 27, 2015 and (ii) sexual harassment based on the period of time when John Doe was Jane Roe's boyfriend in the 2013-2014 school year. MIT presumed the female complainant's story to be true (which it wasn't), and presumed John Doe not to be truthful (which wasn't the case) in order to avoid being found responsible. Importantly, MIT failed to provide John Doe an opportunity to submit a written rebuttal to the investigation report.

6.      On April 25, 2016, MIT held a hearing before a panel of three professors. At the hearing, John Doe denied responsibility. Only two days later, on April 27, 2016, the Chair of the MIT Committee on Discipline sent John Doe a letter informing him that MIT found him responsible for nonconsensual sexual contact and nonconsensual sexual intercourse on February

2

27, 2015 and for sexual harassment during the time of the 2013-2014 school year and notified him

that the sanction was expulsion -- in effect, rubber stamping the investigation report.

7.      Even though John Doe filed an appeal, arguing that the evidence did not support

MIT's findings or the severe sanction of expulsion, MIT denied the appeal on May 13, 2016,

permanently expelling John Doe, just weeks shy of his graduation. John Doe, having experienced

the losses resulting from having a disciplinary record he did not deserve and not having his diploma

that he all but earned, brings this action to rectify the real damage to his life.

8.      In light of the personal and explicit nature of the facts of this matter, as set forth in

greater detail in Plaintiff's Complaint and accompanying Memorandum of Law in Support of

Plaintiff's *Ex Parte* Motion, Plaintiff should be permitted to protect his identity by filing the

Complaint under pseudonym.

**WHEREFORE**, the Court should grant Plaintiff's application in its entirety, and should

order such further and other relief as the Court deems just and proper.

I declare under the penalty of perjury that the foregoing is true and correct, pursuant to

Title 28, United States Code, Section 1746.

**Dated: Boston, Massachusetts**
     **December 16, 2021**

                                        */s/ Tara Davis*
                                        **Tara David, Esq. (BBO #675346)**

3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **JOHN DOE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **-against-** | : | |
| | : | **Civil Action No:  1:21-cv-12060** |
| **MASSACHUSETTS INSTITUTE OF** | : | |
| **TECHNOLOGY,** | : | |
| | : | |
| **Defendant.** | : | |

Upon the *Ex Parte* motion of the Plaintiff for an order permitting the filing of the complaint,

civil cover sheet, and Motion to Proceed Under Pseudonym and upon review of the Declaration of

Tara J. Davis, Esq., and Memorandum of Law in support thereof, it is hereby

**ORDERED** that Plaintiff's *Ex Parte* Motion to Proceed Under Pseudonym be

**GRANTED**.

**Dated:** _____

_____
**UNITED STATES DISTRICT JUDGE**

1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | Civil Action No:  1:21-cv-12060 |
| MASSACHUSETTS INSTITUTE OF | : | |
| TECHNOLOGY, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S *EX PARTE* MOTION TO PROCEED UNDER PSEUDONYM**

Plaintiff John Doe ("Plaintiff"), by his attorneys Nesenoff & Miltenberg, LLP, seeks authorization to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff.

In light of the serious and personal nature of the allegations contained in the Complaint, Plaintiff is justifiably concerned about the possibility of acts of reprisal that could further prevent Plaintiff from proceeding with his future endeavors, and inflict further harm, including the exact type from which Plaintiff seeks relief in this action.

Plaintiff's identity, as described in the Complaint, should not be disclosed to the public due to the nature of the allegations in said Complaint. *See* Declaration of Tara Davis, Esq. attached to Plaintiff's *Ex Parte* Motion to Proceed Under a Pseudonym (the "Davis Declaration"). Additionally, Plaintiff is prepared to provide a statement of his true identity under seal, upon the Court's request.

**STATEMENT OF FACTS**

The following is based upon the accompanying Complaint and Davis Declaration.

This breach of contract, promissory estoppel, and breach of contract/common law denial of basic fairness/arbitrary and capricious decision-making suit is brought on behalf of Plaintiff, who was expelled from Massachusetts Institute of Technology ("MIT") within a month of graduation for alleged sexual misconduct that purportedly occurred over a year earlier and that he did not commit; the expulsion was issued after an unfair process not in compliance with the MIT Student Code's commitment to non-discrimination based on sex.

In January 2016, Plaintiff was a third-year student at MIT on a three-year program. On January 26, 2016, Plaintiff's former girlfriend, "Jane Roe" (a pseudonym), filed a complaint with MIT alleging nonconsensual sexual contact and nonconsensual sexual intercourse by Plaintiff based on one night involving sexual intercourse on February 27, 2015, almost a year earlier than when the complaint was filed by Jane Roe with MIT's Title IX Office. During the course of the investigation, MIT's investigators, on its own initiative, asserted a second charge against Plaintiff, for sexual harassment arising from the period of time when Plaintiff was Roe's boyfriend in the 2013-2014 school year, two years prior to Roe's filing of the complaint with MIT's Title IX Office.

Upon the filing of Jane Roe's disciplinary complaint, MIT's Title IX office launched an investigation, interviewed Plaintiff, Jane Roe, and other students and reviewed various documents. Radical feminist, anti-male bias on the MIT campus guided the investigation report's conclusions, which included that Plaintiff was responsible for (i) nonconsensual sexual contact and nonconsensual sexual intercourse based on the sex that occurred on February 27, 2015, and (ii) sexual harassment based on the period of time when Plaintiff was Jane Roe's boyfriend in the 2013-2014 school year. MIT presumed the female complainant's story to be true (which it wasn't), and presumed Plaintiff not to be truthful (which wasn't the case) in order to avoid being found

responsible. Importantly, MIT failed to provide Plaintiff an opportunity to submit a written rebuttal to their investigation report.

On April 25, 2016, MIT held a hearing before a panel of three professors. At the hearing, Plaintiff denied responsibility. Only two days later, on April 27, 2016, the Chair of the MIT Committee on Discipline sent Plaintiff a letter informing him that MIT found him responsible for nonconsensual sexual contact and nonconsensual sexual intercourse on February 27, 2015, and for sexual harassment during the time of the 2013-2014 school year and notified him that the sanction was expulsion -- in effect, rubber stamping the investigation report.

Even though Plaintiff filed an appeal and argued that the evidence did not support MIT's findings or the severe sanction of expulsion, MIT denied the appeal on May 13, 2016, permanently expelling Plaintiff, just weeks shy of his graduation. Plaintiff, having experienced the losses that resulted from a disciplinary record he did not deserve and did not receive his diploma that he all but earned, brings this action to rectify the real damage to his life.

<u>**ARGUMENT**</u>

Many federal courts permit parties to proceed anonymously when special circumstances arise. Generally, in determining whether to permit a party to proceed anonymously, a court "must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Plaintiffs I Thru XXIII v. Advanced Textile Corp.,* 214 F. 3d 1058, 1068 (9th Cir. 2000). *See also*, *Grottano v. City of New York*, 2016 WL 2604803, at *1 (S.D.N.Y. Mar. 30, 2016) (*quoting Michael v. Blomberg L.P.*, 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015) ("The central inquiry in determining whether a plaintiff may proceed pseudonymously is a balancing of a plaintiff's interest in anonymity … against both

the public interest in disclosure and any prejudice to the defendant") (internal quotation marks omitted).

As neither the U.S. Supreme Court nor the First Circuit have definitively articulated the circumstances under which a plaintiff may use a pseudonym, the Court must look to implicit recognitions and framework established by neighboring district and circuit courts. The Supreme Court has implicitly recognized the use of pseudonyms, and federal courts generally allow plaintiffs to proceed under pseudonyms in cases where the action is of a highly sensitive nature, or when a substantial private interest is involved. *Doe v. Blue Cross & Blue Shield of RI*, 794 F.Supp. 72, 74 (D.R.I. 1992); *see also*, *Roe v. Wade*, 410 U.S. 113 (1973) (allowing plaintiffs to proceed pseudonymously in action involving abortion rights).

The District Court of New Hampshire in *Doe v. Trustees of Dartmouth College* examined whether a plaintiff should be permitted to proceed under a pseudonym in an action regarding a charge of sexual misconduct. Remarking that the Third Circuit's test is consistent with the overall aim of the First Circuit's framework for sealing judicial records, the District Court of New Hampshire relied on the nine-factor balancing test articulated in *Doe v. Megless,* 654 F.3d 404 (3d Cir. 2011), to determine whether the plaintiff could proceed under a pseudonym. *Doe v. Trustees of Dartmouth Coll.,* No. 18-CV-040-LM, 2018 WL 2048385, at *4 (D.N.H. May 2, 2018).

Recognizing that the court must balance the need for confidentiality against the public interest in disclosure (*Doe v. Bell Atl. Bus. Sys. Servs., Inc.,* 162 F.R.D. 418, 420 (D. Mass. 1995)), the Third Circuit identified the following relevant factors for consideration: (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the

purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives; (7) the universal level of public interest in access to the identities of litigants; (8) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (9) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated. *Doe v. Megless,* 654 F.3d 404, 409 (3d Cir. 2011). As outlined below, applying this framework to the instant matter, Plaintiff here should be permitted to proceed under a pseudonym.

A.     <u>**The Litigation Involves Matters That Are Highly Sensitive and of a Personal Nature**</u>

The first factor to be considered weighs in favor of Plaintiff's request for anonymity. Plaintiff should be permitted to proceed under a pseudonym given the highly sensitive and personal nature of this litigation and the facts and circumstances underlying Plaintiff's claims. In the present action, Plaintiff does not merely contend that the revelation of his name would result in embarrassment or public humiliation. Rather, Plaintiff notes the highly sensitive nature and privacy issues that could be involved with being identified as a perpetrator of sexual assault.

In fact, courts around the country, including the District of Massachusetts, have permitted plaintiffs alleging similar claims to proceed anonymously. *See, e.g., Doe v. W. New England Univ.,* 228 F. Supp. 3d 154 (D. Mass. 2017); *Doe v. Brown Univ.,* 210 F. Supp. 3d 310 (D.R.I. 2016); *Doe v. Johnson & Wales Univ.,* 425 F. Supp. 3d 108 (D.R.I. 2019); *Doe v. Louisiana State Univ.,* 2020 WL 6493768 (M.D. La. June 30, 2020); *Doe v. Regis Univ.,* 2021 WL 5329934, at *1 (D.

Colo. Nov. 16, 2021); *Doe v. Columbia Univ.,* 831 F.3d 46 (2d Cir. 2016); *Doe v. Univ. of the South,* 687 F. Supp. 2d 744 (E.D. Tenn. 2009); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561 (D. Mass. 2016); *Doe v. Univ. of S. Florida Bd. of Trs.*, 2015 WL 3453753 (M.D. Fla. 2015); *Doe v. Salisbury Univ.,* 2015 WL 3478134 (D. Md. 2015); *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017); *Doe v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012) ("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses and University Court members involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names," *citing Does I–XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068–69 (9th Cir.2000)). Similarly, Plaintiff here should be permitted to proceed anonymously due to the highly sensitive and personal nature associated with being falsely accused of sexual misconduct.

As observed by the District Court in *Doe v. Trustees of Dartmouth College,* "one's sexual practices are among the most intimate parts of one's life and the public disclosures of such information may subject one to embarrassment or ridicule." *Doe v. Trustees of Dartmouth Coll.,* at *5-6 (*citing to Doe v. Blue Cross & Blue Shield of R.I.,* 794 F. Supp. 72, 74 (D.R.I. 1992) (internal citations omitted)). *See also Doe v. Purdue Univ.,* 321 F.R.D. at 342 ("this litigation requires the disclosure of 'information of the utmost intimacy,' as demonstrated by the details set out in the Complaint, including information regarding Plaintiff's and Jane Roe's sexual relationship, Jane Roe's allegations of sexual misconduct, and the details of the University's findings."). The Northern District of Indiana agreed that, in a case where a student is challenging a university's disciplinary finding related to a sexual misconduct allegation, "forcing Plaintiff to reveal his identity would not advance any aspect of the litigation but instead poses a risk that

Plaintiff would be subject to unnecessary ridicule and attention." *Doe v. Purdue Univ*., 321 F.R.D. at 343 (D. Ind. 2017). Similarly, Plaintiff here should be permitted to proceed anonymously due to the highly sensitive and personal nature associated with the subject matter of this litigation.

**B.     Plaintiff's Identity Has Been Kept Confidential to Date**

The next factor likewise weighs in favor of anonymity.  Plaintiff has protected his identity thus far and has taken steps to keep his identity as a respondent in a Title IX investigation at MIT confidential. Thus, Plaintiff's identity is currently not publicly known, particularly in the public realm, leading up to these proceedings.

**C.     Disclosure of Plaintiff's Identity Would Result in Significant and
         Irreparable Harm to Plaintiff**

Plaintiff should be permitted to proceed anonymously in this matter as the revelation of his identity would result in significant harm to Plaintiff, the exact type which he seeks to remedy by the commencement of this lawsuit. *See Doe v. Colgate Univ.,* 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016). Specifically, if Plaintiff was required to reveal his identity, any ultimate success in this matter would be negated by the disclosure of his name. Even if he was to achieve his objective of clearing his record and obtaining his MIT degree, permitting the underlying details of this matter to be remain in the public domain would nonetheless still hinder his future job opportunities and prospects. It is no secret that employers are familiar with societal concerns related to issues of this nature and would therefore be wary about employing someone who had been accused of sexual assault, regardless of the ultimate outcome in litigation.

Furthermore, if the Court requires Plaintiff to reveal his true identity publicly, even if he ultimately obtained a favorable verdict, his future academic and career prospects would nonetheless be hindered and discoverable by a simple internet search.  The District Court in *Doe v. Trustees of Dartmouth College* recognized this as the most significant factor in its analysis that

the plaintiff's concern of public disclosure would forever subject him to reputational damage and impair his future educational and career prospects, regardless of the outcome of the litigation. *Doe v. Trustees of Dartmouth Coll.,* No. 18-CV-040-LM, 2018 WL 2048385, at *5–6 (D.N.H. May 2, 2018). The Court agreed that this concern was "exacerbated in the Internet age, which can provide additional channels for harassment and will connect plaintiff's name to Dartmouth's findings and sanction forever, whether or not he is successful in this litigation." *Id.*

While in the past courts strongly disfavored allowing plaintiffs to proceed anonymously except in extreme circumstances, the nature of the internet today is such that any plaintiff is readily identifiable, and his information accessible, via a simple online search. *See Doe v. Purdue Univ.,* 321 F.R.D. 339, 343 (D. Ind. 2017). Without a means to control the content disseminated by a media outlet covering a given case, courts must be willing to afford additional protective measures to avoid further damage to a plaintiff involved in a matter concerning such an egregious mishandling of the complaint of sexual assault by Plaintiff. Critically, as is the case in the present matter, "public identification could defeat the very purpose of the litigation." *Doe v. Trustees of Dartmouth Coll.,* at *5–6. Here, forcing Plaintiff to reveal his identity would not further any aspect of the litigation, but would "instead pose[] a risk that Plaintiff would be subject to unnecessary ridicule and attention." *Doe v. Colgate Univ.,* 2016 WL 1448829, at *3.

Based on the foregoing, Plaintiff should be permitted to proceed anonymously, as requiring him to reveal his identity would result in significant harm to Plaintiff, including the exact damages he seeks to remedy in this matter; namely, physical, psychological, emotional, and reputational damages, economic injuries, and the loss of educational and career opportunities.

**D.    Defendant Will Not Be Prejudiced by Permitting
            Plaintiff to Proceed Pseudonymously**

Plaintiff should also be permitted to proceed under a pseudonym because Defendant will not be prejudiced in any way by proceeding against an anonymous party.

"Other than the need to make redactions and take measures not to disclose Plaintiff's identity, Defendant[s] will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Significantly, Defendant is already aware of Plaintiff's true identity. Thus, there is no doubt that Defendant will have an unobstructed opportunity to conduct discovery, present their defenses, and litigate this matter, regardless of whether Plaintiff identifies himself or proceeds anonymously.

Accordingly, Plaintiff should be permitted to proceed anonymously in this action as revealing his name will cause significant prejudice and harm to Plaintiff, while proceeding anonymously will not hinder Defendant in any way.

**E.    There Is a Weak Public Interest in Knowing Plaintiff's Identity**

Plaintiff should also be permitted to proceed in this action anonymously as the public does not have a strong interest in knowing his identity. Considering the nature of the claims presented (i.e., breach of contract, promissory estoppel and breach of contract/common law denial of basic fairness/arbitrary and capricious decision-making), there is a weak public interest in learning Plaintiff's identity as an individual.

There is simply nothing about the status of the Plaintiff that would heighten any public interest beyond the normal public interest in any judicial proceedings sufficient to outweigh Plaintiff's rights to privacy. Allowing Plaintiff to proceed anonymously will not significantly obstruct the public's interest in this matter. Accordingly, there is not a strong public interest in knowing Plaintiff's identity as an individual, as the issues presented to this Court concern a much

greater population of potential plaintiffs. Moreover, the public's knowledge will only be minimally restricted, as it will still know what is alleged to have occurred. Allowing Plaintiff to proceed anonymously will not significantly obstruct the public's interest in this matter. To the contrary, forcing Plaintiff to reveal his identity could have a potential chilling effect on other similarly situated future plaintiffs.

Based on the foregoing, in consideration of the balancing of relevant factors, the Court should allow Plaintiff to employ a pseudonym in this matter. The interests of Defendant and/or the public will not be harmed at this early stage of the case if Plaintiff's name is not revealed. Plaintiff and his attorneys are prepared to address measures to protect the confidentiality of his identity should the Court require disclosure to the public at a later stage in the proceedings.

**F.**    **Additional Considerations Favor Permitting Plaintiff to Remain Anonymous**

The remaining factors articulated in *Doe v. Megless* likewise weigh in favor of permitting Plaintiff to proceed anonymously. Plaintiff does not have nefarious ulterior motives in seeking to use a pseudonym; he seeks redress for the harm suffered.

In addition, Plaintiff also seeks that "Jane Roe" be given pseudonym treatment. The difficulty in allowing involved non-parties to remain anonymous while Plaintiff's identity is revealed warrants the continued use of a pseudonym. The District Court in *Doe v. Trustees of Dartmouth College* recognized the impact removing plaintiff's anonymity would have on plaintiff's accuser Sally Smith, a non-party to the litigation, whose identity would likewise be disclosed if plaintiff were publicly identified. *Doe v. Trustees of Dartmouth Coll.,* No. 18-CV-040-LM, 2018 WL 2048385, at *6 (D.N.H. May 2, 2018).

Similarly, it would be impractical, and time consuming, to require Plaintiff here to disclose his identity, while allowing his accuser and the student witnesses interviewed in relation to the allegations against Plaintiff to remain anonymous

## **CONCLUSION**

Given the highly sensitive and intimate nature of the facts underlying Doe's claims, a pseudonym is necessary to protect his substantial privacy interest, including his safety, reputation, protection against further retaliation, and to prevent public disclosure of his identity, which would cause further psychological harm and stigmatization. For the foregoing reasons, Plaintiff hereby respectfully requests that he be permitted to continue this action pseudonymously.

**Dated: Boston, Massachusetts**
**December 16, 2021**

**Respectfully submitted,**

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff John Doe*

**By: /s/ *Philip A. Byler***
**Philip A. Byler, Esq. (*pro hac vice* pending)**
**Andrew T. Miltenberg, Esq. (*pro hac vice* pending)**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**pbyler@nmllplaw.com**
**amiltenberg@nmllplaw.com**

**By: /s/ *Tara Davis***
**Tara Davis, Esq. (BBO # 675346)**
**101 Federal Street, Nineteenth Floor**
**Boston, Massachusetts 02110**
**(617) 209-2127**
**tdavis@nmllplaw.com**

11

<u>**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**</u>

Plaintiff, through his undersigned counsel, was not able to confer with opposing counsel concerning his request for the filing of this matter under pseudonyms, as this motion is being filed *ex parte*, contemporaneous with the filing of Plaintiff's Complaint. As such, Plaintiff is not yet aware of who will be serving as defense counsel.

<u>*/s/ Tara J. Davis*</u>
Tara J. Davis, Esq. (BBO #675346)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | Civil Action No: 1:21-cv-12060-RGS |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | |
| MASSACHUSETTS INSTITUTE OF | : | |
| TECHNOLOGY, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF PLAINTIFF'S MOTION**
**TO PROCEED UNDER PSEUDONYM**

Plaintiff John Doe ("Plaintiff"), by his attorneys Nesenoff & Miltenberg, LLP, respectfully

submits a Motion for Reconsideration of the Court's December 21, 2021 denial of his Motion to

Proceed Under Pseudonym, (Order Denying Pl.'s Pseudonym Mot., ECF No. 6), and upon

reconsideration, requests that the Court grant the Motion to Proceed Under Pseudonym for both

"John Doe" (the university respondent and Plaintiff here) and "Jane Roe" (the university

complainant) and for a protective order against disclosure by any party of the real names of "John

Doe" and "Jane Roe." In support of his motion, Plaintiff submits his Memorandum of Law in

support of Plaintiff's Motion for Reconsideration, and the Declaration of Tara J. Davis, Esq. with

accompanying exhibits.

Dated: Boston, Massachusetts
       January 11, 2022

                                        Respectfully submitted,

                                        **NESENOFF & MILTENBERG, LLP**
                                        ***Attorneys for Plaintiff John Doe***

                                        **By: /s/ Philip A. Byler**
                                        **Philip A. Byler, Esq. (*pro hac vice* forthcoming)**
                                        **Andrew T. Miltenberg, Esq. (*pro hac vice* forthcoming)**

1

**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**pbyler@nmllplaw.com**
**amiltenberg@nmllplaw.com**

**By: /s/ *Tara J. Davis***
**Tara Davis, Esq. (BBO # 675346)**
**Regina M. Federico, Esq. (BBO #700099)**
**101 Federal Street, Nineteenth Floor**
**Boston, Massachusetts 02110**
**(617) 209-2127**
**tdavis@nmllplaw.com**
**rfederico@nmllplaw.com**

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

Plaintiff, through his undersigned counsel, conferred in good faith with Jared Wilcoxson, Counsel in the Office of General Counsel of Defendant MIT, concerning Plaintiff's request for reconsideration in this case. However, the Parties did not come to an agreement concerning the instant motion.

*/s/ Tara J. Davis*
Tara J. Davis

**CERTIFICATE OF SERVICE**

The document was served electronically upon all counsel of record filing through the ECF system on January 11, 2022.

*/s/ Tara J. Davis*
Tara J. Davis

3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **JOHN DOE,** | : | |
| | : | **Civil Action No: 1:21-cv-12060-RGS** |
| **Plaintiff,** | : | |
| | : | |
| -against- | : | |
| | : | |
| **MASSACHUSETTS INSTITUTE OF** | : | |
| **TECHNOLOGY,** | : | |
| | : | |
| **Defendant.** | : | |

**<u>ORDER TO SHOW CAUSE</u>**

Now on this __ day of January 2022, upon consideration of the accompanying Declaration of Tara J. Davis, Esq., the accompanying Plaintiff's Memorandum of Law in support of Plaintiff's Motion for Reconsideration, and a Proposed Order,

IT IS HEREBY ORDERED that:

Defendant SHOW CAUSE on _____ 2022 why, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and the inherent authority of the Court, this Court should not reconsider the Court's Order dated December 21, 2021, denying the Plaintiff's Motion to Proceed Under Pseudonym, and upon reconsideration, grant Plaintiff's Motion to Proceed Under Pseudonym for both "John Doe" (the university respondent and Plaintiff here) and "Jane Roe" (the university complainant) and for a protective order against disclosure by any party of the real names of "John Doe" and "Jane Roe," and for such other and further relief as the Court deems just and proper, and

IT IS FURTHER ORDERED that pending the Court's determination of the Plaintiff's application for reconsideration of the Court's Order dated December 21, 2021, the portion of the

Court's Order dated December 21, 2021, requiring by January 11, 2022, Plaintiff file an Amended Complaint with his true name is stayed, and

IT IS FURTHER ORDERED that this Order and the papers upon which it is based be served by e-mail on or before Janaury__, 2022 on Jared Wilcoxson, Counsel in the General Counsel's Office, Massachusetts Institute of Technology, 105 Broadway, Cambridge, Massachusetts 02142.

Dated _____

_____
            U.S. District Judge Richard G. Stearns

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | **Civil Action No: 1:21-cv-12060-RGS** |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | |
| MASSACHUSETTS INSTITUTE OF | : | |
| TECHNOLOGY, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR RECONSIDERATION TO PROCEED UNDER PSEUDONYM**

Plaintiff John Doe ("Plaintiff"), by his attorneys Nesenoff & Miltenberg, LLP, respectfully submits this Memorandum of Law in support of Plaintiff's Motion for Reconsideration of the Court's denial of Plaintiff's Motion to Proceed Under Pseudonym (Order Denying Pl.'s Pseudonym Mot., ECF No. 6), attached to Tara J. Davis Esq.'s Declaration as <u>Exhibit A</u>, and upon reconsideration, request that the Court grant the Motion to Proceed Under Pseudonym for both "John Doe" (the university respondent and Plaintiff here) and "Jane Roe" (the university complainant) and for a protective order against disclosure by any party of the real names of "John Doe" and "Jane Roe."

**I.     Factual Summary of the Allegations of the Complaint**

In January 2016, John Doe was a third-year student at MIT on a three-year program. On January 26, 2016, John Doe's former girlfriend "Jane Roe" (a pseudonym) filed a complaint with MIT alleging nonconsensual sexual contact and nonconsensual sexual intercourse by John Doe based on one night involving sexual intercourse on February 27, 2015, almost a year earlier than when the complaint was filed by Jane Roe with MIT's Title IX Office. During the course of the investigation, MIT's investigators on its own initiative asserted a second charge against Doe, for

sexual harassment, arising from the period of time when Doe was Roe's boyfriend in the 2013-2014 school year, two years prior to Roe's filing of the complaint with MIT's Title IX Office. For a full recitation of the facts, please see Plaintiff's Complaint (ECF No. 1), attached to Tara J. Davis Esq.'s Declaration as Exhibit B.

Upon the filing of Jane Roe's disciplinary complaint, MIT's Title IX office launched an investigation, interviewing John Doe, Jane Roe and other students and reviewing various documents. Radical feminist anti-male bias on the MIT campus guided the investigation report's conclusions, which included that John Doe was responsible for: (i) nonconsensual sexual contact and nonconsensual sexual intercourse based on the sex that occurred on February 27, 2015; and (ii) sexual harassment based on the period of time when John Doe was Jane Roe's boyfriend in the 2013-2014 school year. MIT presumed the female complainant's story to be true (which it wasn't), and presumed John Doe not to be truthful (which wasn't the case) in order to avoid being found responsible. Importantly, MIT failed to provide John Doe an opportunity to submit a written rebuttal to the investigation report.

On April 25, 2016, MIT held a hearing before a panel of three professors. At the hearing, John Doe denied responsibility. Only two days later, on April 27, 2016, the Chair of the MIT Committee on Discipline sent John Doe a letter informing him that MIT found him responsible for nonconsensual sexual contact and nonconsensual sexual intercourse on February 27, 2015 and for sexual harassment during the time of the 2013-2014 school year and notified him that the sanction was expulsion—in effect, rubber stamping the investigation report.

Even though John Doe filed an appeal, arguing that the evidence did not support MIT's findings or the severe sanction of expulsion, MIT denied the appeal on May 13, 2016, permanently expelling John Doe, just weeks shy of his graduation. John Doe, having experienced the losses

resulting from having a disciplinary record he did not deserve and not having his diploma that he all but earned, brings this action to rectify the real damage to his life.

## II.   Analysis

This Court, in denying Plaintiff's Motion to Proceed Under Pseudonym, relied upon general statements of law in case law, the most recent of which was rendered in 2011. Since 2011, this Court, and courts throughout the United States, have permitted plaintiffs pursing claims against colleges and universities arising from alleged sexual encounters, much like Plaintiff Doe in the instant action, to proceed under pseudonyms.

### A.   The Legal Standard for a Motion for Reconsideration

"A motion for reconsideration will be allowed if the movant shows a manifest error of law, newly discovered evidence or that the Court has made an error 'not of reasoning but apprehension.'" *Ruiz Rivera v. Pfizer Pharm., LLC,* 521 F.3d 76, 81 (1st Cir. 2008); *Provanzano v. Parker View Farm, Inc.,* 827 F. Supp. 2d 53, 57 (D. Mass. 2011); *see also United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) ("if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust"). For the reasons articulated below, Plaintiff' motion for reconsideration should be granted.

### B.   The Legal Standard for Permitting Plaintiffs to Proceed Under Pseudonyms

Federal courts across the United States have permitted parties to proceed anonymously when special circumstances arise. Generally, in determining whether to permit a party to proceed anonymously, a court "must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Plaintiffs I Thru XXIII v. Advanced Textile Corp.,* 214 F. 3d 1058, 1068 (9th Cir. 2000). As neither the U.S.

Supreme Court nor the First Circuit has definitively articulated the circumstances under which a plaintiff may use a pseudonym, the Court must turn to the guidance established by neighboring district and circuit courts. The District Court of New Hampshire in *Doe v. Trustees of Dartmouth College* (No. 18-CV-040-LM, 2018 WL 2048385, at *4 (D.N.H. May 2, 2018)) analyzed whether a plaintiff should be permitted to proceed under a pseudonym in his action challenging a disciplinary finding of Dartmouth College related to a charge of sexual misconduct. Commenting that the Third Circuit's test is consistent with the general objective of the First Circuit's structure for sealing judicial records, the District Court of New Hampshire utilized the nine-factor balancing test articulated in *Doe v. Megless* (654 F.3d 404 (3d Cir. 2011)) to determine whether the plaintiff could proceed under a pseudonym. *Doe v. Trustees of Dartmouth Coll.,* No. 18-CV-040-LM, 2018 WL 2048385, at *4 (D.N.H. May 2, 2018).

Acknowledging that the court must balance the need for confidentiality against the public interest in disclosure (*Doe v. Bell Atl. Bus. Sys. Servs., Inc.,* 162 F.R.D. 418, 420 (D. Mass. 1995)), the Third Circuit articulated the subsequent relevant factors for consideration: (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives; (7) the universal level of public interest in access to the identities of litigants; (8) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise,

there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (9) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated. *Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011).[1]

### C.    *Similarly Situated Plaintiffs Are Routinely Permitted to Proceed as a Pseudonym in Courts Across the United States, Including This Court*

Since 2011, courts throughout the United States, including this Court, have routinely granted pseudonym treatment in cases involving alleged sexual misconduct by male students, with pseudonym treatment accorded to both the male university respondent and the female university complainant, recognizing that "exceptional circumstances" exist in cases involving alleged sexual misconduct occurring amongst college aged students.

This Court in particular has permitted similarly situated plaintiffs—namely, male students challenging the findings of their private universities related to allegations of sexual misconduct—to proceed under a pseudonym. *See, e.g., Doe v. Trs. of Boston Coll,* No. 1:15-cv-10790, ECF No. 17 (D. Mass. June 23, 2015) (permitting a male student plaintiff pursing claims against the college defendant, inclusive of breach of contract, to proceed under a pseudonym in a case stemming from a finding against him as a result of the private college's student disciplinary process); *Doe v. Brandeis Univ.,* No. 1:15-cv-11557, ECF No. 28 (D. Mass. June 17, 2015) (authorizing a male student plaintiff pursing a breach of contract claim against the private university arising from an erroneous finding as a result of the university defendant's sexual misconduct disciplinary process to proceed under a pseudonym; "[t]he current record suggests that plaintiff could be subject to 'social stigmatization or embarrassment if his name is revealed'"); *Doe v. Amherst Coll.,* ECF No. 1:15-cv-30097, ECF No. 16 (D. Mass. June 30, 2015) (permitting a male plaintiff expelled from a private college as a result of a finding of responsibility due to alleged sexual misconduct to proceed

---

[1] *See* ECF No. 5 for Plaintiff's full analysis on the factors set forth above.

under a pseudonym; plaintiff brought forth a claim for breach of contract against the college); *Doe v. Harvard Univ. et. al.,* No. 1:18-cv-12150-IT, ECF No. 8 (D. Mass. Nov. 7, 2018) (allowing a male student plaintiff found responsible through the school's disciplinary process for allegations concerning sexual misconduct to proceed under a pseudonym); *Doe v. Trs. of Boston Coll.,* No. 1:19-cv-11626, ECF No. 34 (D. Mass. Aug. 20, 2019) (permitting a male plaintiff accused and found responsible for sexual assault at the college disciplinary level to proceed under a pseudonym in a case inclusive of a claim for breach of contract); *Doe v. Williams Coll*., No. 3:20-cv-30024, ECF No. 7 (D. Mass. Feb. 21, 2020); and *Doe v. Stonehill Coll. Inc.,* No. 1:20-cv-10468, ECF No. 6 (D. Mass. Mar. 10, 2020).

Additionally, appellate courts across the United States have issued decisions in numerous cases that stemmed from allegations of sexual misconduct, where plaintiffs were likewise permitted to use pseudonyms. *See*, *e.g.*, *Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016); *Doe v. Miami*, 882 F.3d 579 (6th Cir. 2018); *Doe v. Oberlin*, 963 F.3d 580 (6th Cir. 2020); *Doe v. University of Sciences*, 961 F.3d 203 (3d Cir. 2020); *Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019); *Doe v. University of Denver*, 1 F.4[th] 822 (10th Cir. 2021); *Doe v. Univ. of Arkansas-Fayetteville*, 974 F.3d 858 (8th Cir. 2020).

Furthermore, U.S. District Courts have issued decisions in numerous cases where the relevant court permitted plaintiffs to proceed anonymously in cases that derived from a finding of a violation of the school's sexual misconduct policy. *See, e.g., Doe v. Stonehill Coll. Inc.*, 2021 WL 706228 (Feb. 23, 2021); *Doe v. Rollins Coll.*, 2020 WL 8409325 (M.D. Fla. July 13, 2020); *Doe v. Harvard Univ.*, 462 F.Supp.3d 51 (D. Mass. 2020); *Doe v. Vassar College,* 2019 WL 6222918 (Dec. 21, 2019); *Doe v. Trs. of Boston Coll.,* No. 1:19-cv-11626, ECF No. 34 (D. Mass. Aug. 20, 2019); *Doe v. Univ. of Cincinnati*, 2018 WL 1521631 (S.D. Ohio Mar. 28, 2018); *Doe v.*

*Purdue Univ.*, 321 F.R.D. 339 (N.D. Ind. 2017); *Doe v. Amherst College*, 238 F.Supp.3d 185 (D. Mass. 2017); *Doe v. Grinnell Col;.,* 2017 WL 11646145 (S.D. Iowa July 10, 2017); *Doe v. Trustees Univ. Pennsylvania*, 270 F. Supp.3d 799 (E.D. Pa. 2017); *Doe v. Brown Univ.*, 166 F.Supp.3d 177 (D.R.I. 2016); *Doe v. Brandeis Univ.*, 177 F.Supp.3d 561 (D. Mass. 2016); *Doe v. Lynn Univ., Inc.*, 224 F.Supp.3d 1288 (S.D. Fla. 2016); *Doe v. Washington and Lee Univ.*, 473 F.Supp.3d 909 (W.D. Va. 2015).

The pseudonym decision in *Doe v. Purdue Univ.* (321 F.R.D. 339 (N.D. Ind. 2017)), is instructive; the university defendants opposed the motion for pseudonym status for the students, but the U.S. District Court granted it. The legal theory of *Doe v. Purdue Univ.* resembles that of *Doe v. Amherst Coll.* (238 F.Supp.3d 195 (D. Mass. 2017)), where the Court permitted the plaintiff to proceed under a pseudonym. *Doe v. Amherst Coll., et. al.* 3:15-cv-30097, ECF No. 16 (D. Mass June 16, 2015) (granting plaintiff's motion to proceed under a pseudonym). One factor cited and discussed by the District Court in *Doe v. Purdue Univ.* (321 F.R.D. at 342), a factor very present in this case, was "information of the utmost intimacy." The Court stated:

> [T]his litigation requires the disclosure of **"information of the utmost intimacy,"** as demonstrated by the details set out in the Complaint, **including information regarding Plaintiff's and Jane Doe's sexual relationship, Jane Doe's allegations of sexual misconduct, and the details of the University's findings.** Other courts have permitted plaintiffs alleging similar claims against colleges and universities to proceed anonymously. *See, e.g.*, *John Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) (ruling on a motion to dismiss under Rule 12(b)(6) and acknowledging, but not analyzing, that the plaintiff is proceeding by pseudonym); *Doe v. Brown Univ.*, 210 F.Supp.3d 310 (D.R.I. 2016) (acknowledging the prior grant of a motion to proceed pseudonymously); *Doe v. Colgate Univ.*, No. 5:15-CV-1069, 2016 WL 1448829 (N.D.N.Y. Apr. 12, 2016) (granting plaintiff's motion to proceed under pseudonym after balancing the factors set out in *Sealed Plaintiff*, 537 F.3d at 188–89); *Doe v. Washington & Lee Univ.*, No. 14CV52, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) (ruling on a motion to dismiss under Rule 12(b)(6) and acknowledging, but not analyzing, that the plaintiff is proceeding by pseudonym); *Doe v. Univ. of Massachusetts–Amherst*, No. 14-30143, 2015 WL 4306521, at *5 (D. Mass. July 14, 2015) (same); *Doe v. Salisbury Univ.*, JKB–1403853, 2015 WL 3478134 (D. Md. June 2, 2015) (same); *Doe v. Univ. of S.*

*Florida Bd. of Trs.*, No. 8:15-CV-682, 2015 WL 3453753 (M.D. Fla. May 29, 2015) (same); *Doe v. Univ. of Montana*, No. CV 12-77, 2012 WL 2416481 (D. Mont. June 26, 2012) (unsealing the case but maintaining plaintiff and accuser's anonymity through the use of pseudonyms, finding "that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names"); *Doe v. Univ. of the South*, 687 F.Supp.2d 744, 764 (E.D. Tenn. 2009) (overruling, without substantive analysis, the defendant's objection to the Magistrate Judge's granting of the Plaintiff's motion to proceed under pseudonyms).

Defendants counter that "Plaintiff's prolix complaint freely discloses much intimate information, including ... history of intercourse ... [and] anatomic and other details of sexual and social contacts." (ECF 16, p. 3). It is unclear how this lessens the importance of this factor. If anything, **the details in the Complaint, which Plaintiff argues are necessary for him to state a claim, strengthen the argument that highly sensitive and personal details of an intimate nature will be at issue in this case.** This second factor weighs in favor of allowing Plaintiff to proceed under a pseudonym.

*Doe v. Purdue Univ.,* 321 F.R.D. at 342 (emphasis added).

Another factor cited and discussed by the District Court in *Doe v. Purdue Univ.* (321 F.R.D. at 343), a factor also very present in this case, was the injury from identification. The Court stated:

[T]he Court considers whether Plaintiff would risk suffering injury if identified, which is related to the factor considered by the Second Circuit Court of Appeals of whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity. This factor also weighs in Plaintiff's favor. **If Plaintiff's identity is revealed, Plaintiff would suffer the very harm to his reputation that he seeks to remedy by bringing this lawsuit**; in other words, if Plaintiff is successful in proving that the charges of sexual misconduct against him were unfounded and that Defendants' procedures violated his due process rights, the revelation of Plaintiff's identity "would further exacerbate the emotional and reputational injuries he alleges." *Colgate Univ.*, 2016 WL 1448829, at *3. As the court in *Colgate University* reasoned:

The rise of sexual assaults on college campuses is a troubling epidemic, however, in addressing this epidemic, courts have a duty to ensure that "[e]ach case must be decided on its own merits, according to its own facts. If a college student is to be marked for life as a sexual predator, it is reasonable to require that he be provided a *343 fair opportunity to defend himself and an impartial arbiter to make that decision." The Court finds that forcing Plaintiff to reveal his identity would not advance any aspect of the litigation but instead poses a risk that Plaintiff would be subject to unnecessary ridicule

8

> and attention. The Court is also mindful of the potential chilling effect that forcing Plaintiff to reveal his identity would have on future plaintiffs facing similar situations. *Id.* (citing *Doe v. Brandeis Univ.*, 177 F.Supp.3d 561, 573 (D. Mass. 2016)). The nature of the internet in present society also makes case-related information associated with an individual's name accessible.

*Doe v. Purdue Univ.*, 321 F.R.D. at 343 (emphasis added).

### D.    The Instant Case is Similar to Those Where the Court Has Permitted Pseudonym Use

As the facts set forth above demonstrate, and as Plaintiff's complaint (ECF No. 1), Davis Declaration, Exhibit B, highlights, the Plaintiff in the instant matter is similarly situated to the plaintiffs noted above where courts have permitted plaintiffs to proceed pseudonymously. Plaintiff John Doe here brings forth claims for breach of contract, promissory estoppel, and breach of contract/common law denial of basic fairness/arbitrary and capricious decision-making against a private institution of higher education stemming from an unfair process that did not comport with MIT's Student Code's commitment to non-discrimination based on sex. MIT expelled Plaintiff John Doe within a month of graduation for alleged sexual misconduct that purportedly occurred over a year earlier which he did not commit.

Similar to *Doe v. Purdue Univ.*, where the court emphasized that "highly sensitive and personal details of an intimate nature will be at issue in this case[,]" Plaintiff's claims for relief by their very nature contain details of a highly sensitive and intimate nature—namely the sexual relationship between John Doe and Jane Roe. *Doe v. Purdue Univ.*, 321 F.R.D. at 343. Plaintiff does not simply highlight that the disclosure of his name would result in public humiliation or embarrassment. Instead, Plaintiff highlights the extremely sensitive nature and privacy issues that could be associated with being falsely linked to an allegation of sexual misconduct. As the District Court in *Doe v. Trustees of Dartmouth College* highlighted, "one's sexual practices are among the

most intimate parts of one's life and the public disclosures of such information may subject one to embarrassment or ridicule." *Doe v. Trustees of Dartmouth Coll.,* at *5-6 (*citing to Doe v. Blue Cross & Blue Shield of R.I.,* 794 F. Supp. 72, 74 (D.R.I. 1992) (internal citations omitted)).

Furthermore, like the cases where the courts have permitted plaintiffs to proceed under pseudonyms, public disclosure of Plaintiff's identity would cause the exact type of harm that Plaintiff seeks to prevent by bringing this action. In *Doe v. Trustees of Dartmouth College,* the court recognized that the most significant factor in its analysis was plaintiff's concern that public disclosure would forever subject him to reputational damage and impair his future educational and career prospects, regardless of the outcome of the litigation. *Doe v. Trustees of Dartmouth Coll.,* No. 18-CV-040-LM, 2018 WL 2048385, at *5–6 (D.N.H. May 2, 2018). The Court agreed that this concern was "exacerbated in the Internet age, which can provide additional channels for harassment and will connect plaintiff's name to Dartmouth's findings and sanction forever, whether or not he is successful in this litigation." *Id.* Through the Internet's vast capabilities today via simple online search, any plaintiff is quickly identifiable, and their information is readily accessible. *See Doe v. Purdue Univ.,* 321 F.R.D. at 343. Devoid of a mechanism to control the content disseminated by a media outlet covering a given case, courts must be willing to allow additional protective measures to avoid further damage to a plaintiff involved in a matter concerning such egregious and unfounded accusations as the present one. Significantly, as is the case in the instant matter, "public identification could defeat the very purpose of the litigation." *Doe v. Trustees of Dartmouth Coll.* at *5–6.

**III.     Conclusion**

For the reasons stated above, the Court should reconsider your Honor's denial of Plaintiff's Motion to Proceed Under Pseudonym, and upon reconsideration, grant the motion, permitting

10

pseudonym treatment for both "John Doe" (the university respondent and Plaintiff here) and "Jane

Roe" (the university complainant) and for a protective order against disclosure by any party of the

real names of "John Doe" and "Jane Roe." Additionally, if the Court wishes to adhere to the

Court's original ruling, Plaintiff requests the Order with respect to dismissal be stayed so that

Plaintiff may seek appellate review of what is a collateral order. *Coopers & Lybrand v. Livesay*,

437 U.S. 463, 468 (1978); *Cohen v. Beneficial Indus. Loan Corp*., 337 U.S. 541, 546 (1949).

**Dated: Boston, Massachusetts**
     **January 10, 2022**

                      **Respectfully submitted,**

                      **NESENOFF & MILTENBERG, LLP**
                      *Attorneys for Plaintiff John Doe*

                      **By: /s/ Philip A. Byler**
                      **Philip A. Byler, Esq. (*pro hac vice* forthcoming)**
                      **Andrew T. Miltenberg, Esq. (*pro hac vice* forthcoming)**
                      **363 Seventh Avenue, Fifth Floor**
                      **New York, New York 10001**
                      **(212) 736-4500**
                      **pbyler@nmllplaw.com**
                      **amiltenberg@nmllplaw.com**

                      **By: /s/ Tara J. Davis**
                      **Tara Davis, Esq. (BBO # 675346)**
                      **Regina M. Federico, Esq. (BBO #700099)**
                      **101 Federal Street, Nineteenth Floor**
                      **Boston, Massachusetts 02110**
                      **(617) 209-2127**
                      **tdavis@nmllplaw.com**
                      **rfederico@nmllplaw.com**

<u>**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**</u>

     Plaintiff, through his undersigned counsel, conferred in good faith with Jared Wilcoxson, Counsel in the Office of General Counsel of Defendant MIT, concerning Plaintiff's request for reconsideration in this case. However, the Parties did not come to an agreement concerning the instant motion.

<u>*/s/ Tara J. Davis*</u>
Tara J. Davis

<u>**CERTIFICATE OF SERVICE**</u>

The document was served electronically upon all counsel of record filing through the ECF system on January 10, 2022.

*/s/ Tara J. Davis*
Tara J. Davis

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JOHN DOE,                                          :
                                                   :
                 Plaintiff,                        :    **Civil Action No: 1:21-cv-12060-RGS**
                                                   :
        -against-                                  :
                                                   :
MASSACHUSETTS INSTITUTE OF                         :
TECHNOLOGY,                                         :
                                                   :
                 Defendant.                        :

**DECLARATION OF TARA J. DAVIS, ESQ. IN SUPPORT**
**OF PLAINTIFF'S MOTION, BROUGHT ON BY ORDER**
**TO SHOW CAUSE, FOR RECONSIDERATION OF**
**PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM**

**TARA J. DAVIS, ESQ**., hereby declares subject to the penalties of perjury pursuant to 28 U.S.C. § 1746:

1.      I am a Partner at Nesenoff & Miltenberg LLP, the attorneys for Plaintiff John Doe ("Plaintiff") in the above-captioned case. I am admitted to practice in several courts across the United States, including the courts of the Commonwealth of Massachusetts and District of Massachusetts.

2.      I respectfully submit this declaration in support of Plaintiff's Motion to Reconsider your Honor's denial of Plaintiff's Motion to Proceed Under Pseudonym, brought on by Order To Show Cause, and upon reconsideration, request that your Honor grant the motion for pseudonym treatment for both "John Doe" (the university respondent and Plaintiff here) and "Jane Roe" (the university complainant) and for a protective order against disclosure by any party of the real names of "John Doe" and "Jane Roe."

3.      As explained in the accompanying Memorandum of Law, the Court's decision shows a manifest error of law not in accord with the applicable case law since 2011. The Court, in

denying Plaintiff's Motion to Proceed Under Pseudonym, relied upon general statements of law in case law, the most recent of which was rendered in 2011. Attached as <u>Exhibit A</u> is a copy of your Honor's Order.

4.      Since 2011, courts have routinely granted pseudonym treatment in cases involving alleged sexual misconduct by male students, with pseudonym treatment accorded to both the male university respondent and the female university complainant, recognizing that "exceptional circumstances" exist in cases involving alleged sexual misconduct occurring amongst college aged students.

5.      Appellate courts across the United States have issued decisions in numerous cases stemming from alleged sexual misconduct involving plaintiffs that were permitted to use pseudonyms.  *See*, *e.g.*, *Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016); *Doe v. Miami*, 882 F.3d 579 (6th Cir. 2018); *Doe v. Oberlin*, 963 F.3d 580 (6th Cir. 2020); *Doe v. University of Sciences*, 961 F.3d 203 (3d Cir. 2020); *Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019); *Doe v. University of Denver*, 1 F.4[th] 822 (10th Cir. 2021); *Doe v. Univ. of Arkansas-Fayetteville*, 974 F.3d 858 (8th Cir. 2020).

6.      Similarly, U.S. District Courts have issued decisions in numerous cases where the relevant court permitted plaintiffs to proceed anonymously in cases that derived from a finding of a violation of the school's sexual misconduct policy. *See*, *e.g.*, *Doe v. Stonehill Coll. Inc.*, 2021 WL 706228 (Feb. 23, 2021); *Doe v. Rollins Coll.*, 2020 WL 8409325 (M.D. Fla. July 13, 2020); *Doe v. Harvard Univ.*, 462 F.Supp.3d 51 (D. Mass. 2020); *Doe v. Vassar College,* 2019 WL 6222918 (Dec. 21, 2019); *Doe v. Trs. of Boston Coll.,* No. 1:19-cv-11626, ECF No. 34 (D. Mass. Aug. 20, 2019); *Doe v. Univ. of Cincinnati*, 2018 WL 1521631 (S.D. Ohio Mar. 28, 2018); *Doe v. Purdue Univ.*, 321 F.R.D. 339 (N.D. Ind. 2017); *Doe v. Amherst College*, 238 F.Supp.3d 185 (D. Mass. 2017); *Doe v. Grinnell Col;.,* 2017 WL 11646145 (S.D. Iowa July 10, 2017); *Doe v. Trustees*

[2]

*Univ. Pennsylvania*, 270 F. Supp.3d 799 (E.D. Pa. 2017); *Doe v. Brown Univ.*, 166 F.Supp.3d 177

(D.R.I. 2016); *Doe v. Brandeis Univ.*, 177 F.Supp.3d 561 (D. Mass. 2016); *Doe v. Lynn Univ.,*

*Inc.*, 224 F.Supp.3d 1288 (S.D. Fla. 2016); *Doe v. Washington and Lee Univ.*, 473 F.Supp.3d 909

(W.D. Va. 2015).

7.     Attached as <u>Exhibit B</u> is the Complaint (ECF No. 1) where Plaintiff Doe brings

forth claims for breach of contract, promissory estoppel and breach of contract/common law denial

of basic fairness/arbitrary and capricious decision-making. MIT expelled Doe within a month of

graduation for alleged sexual misconduct that purportedly occurred over a year earlier and that he

did not commit; the expulsion was issued after an unfair process not in compliance with the MIT

Student Code's commitment to non-discrimination based on sex.

8.     Plaintiff's claims set forth here are akin to the similarly situated plaintiffs noted

above where courts have permitted proceeding pseudonymously.

9.     In January 2016, John Doe was a third-year student at MIT on a three-year program.

On January 26, 2016, John Doe's former girlfriend "Jane Roe" (a pseudonym) filed a complaint

with MIT alleging nonconsensual sexual contact and nonconsensual sexual intercourse by John

Doe based on one night involving sexual intercourse on February 27, 2015, almost a year earlier

than when the complaint was filed by Jane Roe with MIT's Title IX Office. During the course of

the investigation, MIT's investigators on its own initiative asserted a second charge against Doe,

for sexual harassment, arising from the period of time when Doe was Roe's boyfriend in the 2013-

2014 school year, two years prior to Roe's filing of the complaint with MIT's Title IX Office.

10.    Upon the filing of Jane Roe's disciplinary complaint, MIT's Title IX office

launched an investigation, interviewing John Doe, Jane Roe and other students and reviewing

various documents. Radical feminist anti-male bias on the MIT campus guided the investigation

[3]

report's conclusions, which included that John Doe was responsible for (i) nonconsensual sexual contact and nonconsensual sexual intercourse based on the sex that occurred on February 27, 2015 and (ii) sexual harassment based on the period of time when John Doe was Jane Roe's boyfriend in the 2013-2014 school year. MIT presumed the female complainant's story to be true (which it wasn't), and presumed John Doe not to be truthful (which wasn't the case) in order to avoid being found responsible. Importantly, MIT failed to provide John Doe an opportunity to submit a written rebuttal to the investigation report.

11.    On April 25, 2016, MIT held a hearing before a panel of three professors. At the hearing, John Doe denied responsibility. Only two days later, on April 27, 2016, the Chair of the MIT Committee on Discipline sent John Doe a letter informing him that MIT found him responsible for nonconsensual sexual contact and nonconsensual sexual intercourse on February 27, 2015 and for sexual harassment during the time of the 2013-2014 school year and notified him that the sanction was expulsion -- in effect, rubber stamping the investigation report.

12.    Even though John Doe filed an appeal, arguing that the evidence did not support MIT's findings or the severe sanction of expulsion, MIT denied the appeal on May 13, 2016, permanently expelling John Doe, just weeks shy of his graduation. John Doe, having experienced the losses resulting from having a disciplinary record he did not deserve and not having his diploma that he all but earned, brings this action to rectify the real damage to his life.

13.    In light of the personal and explicit nature of the facts of this matter, as set forth in greater detail in Plaintiff's Complaint and accompanying Memorandum of Law in Support of Plaintiff's Motion for Reconsideration, Plaintiff should be permitted to protect his identity and his accuser's identity by filing the Complaint under pseudonym and issuing a protective order against

[4]

any party disclosing the real names of "John Doe" (the university respondent and Plaintiff here) and "Jane Roe" (the university complainant).

 **WHEREFORE**, the Court should reconsider your Honor's denial of Plaintiff's Motion to Proceed Under Pseudonym, and upon reconsideration, grant the motion for pseudonym treatment for both "John Doe" (the university respondent and Plaintiff here) and "Jane Roe" (the university complainant) and for a protective order against disclosure by any party of the real names of "John Doe" and "Jane Roe."  Additionally, if the Court wishes to adhere to the Court's original ruling, Plaintiff requests that the Order with respect to pseudonym treatment be stayed so that Plaintiff may seek appellate review of what is a collateral order.  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

 I declare under the penalty of perjury that the foregoing is true and correct, pursuant to Title 28, United States Code, Section 1746.

**Dated: Boston, Massachusetts**
  **January 10, 2022**

        */s/ Tara J. Davis*
        **Tara J. Davis, Esq.**

[5]

EXHIBIT A

**Erin Kerrane**

| | |
|---|---|
| **From:** | ECFnotice@mad.uscourts.gov |
| **Sent:** | Tuesday, December 21, 2021 3:16 PM |
| **To:** | CourtCopy@mad.uscourts.gov |
| **Subject:** | Activity in Case 1:21-cv-12060-RGS Doe v. Massachusetts Institute of Technology Order on Motion for Miscellaneous Relief |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

United States District Court

District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered on 12/21/2021 at 3:15 PM EST and filed on 12/21/2021

| | |
|---|---|
| **Case Name:** | Doe v. Massachusetts Institute of Technology |
| **Case Number:** | 1:21-cv-12060-RGS |
| **Filer:** | |
| **Document Number:** | 6(No document attached) |

**Docket Text:**
Judge Richard G. Stearns: ELECTRONIC ORDER entered denying [2] Motion to proceed under a pseudonym. Federal Rule of Civil Procedure 10(a) requires that "[t]he title of the complaint must name all of the parties." "This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011); *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997) ("Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts.").

In a broader context, the First Circuit has held that a showing of "exceptional circumstances" is required to "overbear the public's right of access" the "starting point must always be the common-law presumption in favor of public access... to judicial records [to promote] quality, honesty and respect for our legal system." *Nat'l Org. For Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011); *see also F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412 (1st Cir. 1987). In the more immediate context, exceptional circumstances have been held to justify the use of a plaintiff's pseudonym in cases involving "abortion, birth control, [gender identity], mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011); *see also Francis M. Dougherty, Propriety and Effect of Use of Fictitious Name of Plaintiff in Federal Court*, 97 A.L.R. Fed. 369 (1990) (collecting cases). That a plaintiff may suffer embarrassment or economic harm as a result of public identification

does not rise to the level of exceptional circumstances; rather, the plaintiff must show "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate,* 596 F.3d 1036, 1043 (9th Cir. 2010).

Doe's expressed "fears" concern "the highly sensitive nature and privacy issues that could be involved with being identified as a perpetrator of sexual assault." Pl.'s Mem. at 5. Specifically, given that Doe "has protected his identity thus far and has taken steps to keep his identity... confidential," *id.* at 7, Doe argues that the fact that his identity as a Title IX respondent could be ascertained by "a simple online search" would "result in significant harm... including physical, psychological, emotional, and reputational damages, economic injuries, and the loss of educational career opportunities." *Id.* at 8. The court finds this speculative conjecture insufficient to overcome the presumption of public access. Moreover, if Doe's fears are future reputational harm, he should understand that proceeding anonymously now is no cure, as the full facts of the case will emerge if the litigation proceeds to trial.

If Doe intends to proceed with this matter, he must file no later than January 11, 2022, an amended complaint under his true name.

(RGS, law2)

1:21-cv-12060-RGS Notice has been electronically mailed to:

Tara Jill Davis    tdavis@nmllplaw.com, amiltenberg@nmllplaw.com, cgarcia@nmllplaw.com, ekerrane@nmllplaw.com

1:21-cv-12060-RGS Notice will not be electronically mailed to:

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **JOHN DOE,** | : | |
| | : | **Civil Action No: 1:21-cv-12060-RGS** |
| **Plaintiff,** | : | |
| | : | |
| **-against-** | : | |
| | : | |
| **MASSACHUSETTS INSTITUTE OF** | : | |
| **TECHNOLOGY,** | : | |
| | : | |
| **Defendant.** | : | |

**[PROPOSED] ORDER**

Upon the papers submitted for reconsideration of the Court's Order dated December 21, 2021, denying the Plaintiff's Motion to Proceed Under Pseudonym, the Court GRANTS the motion for reconsideration and further GRANTS the Motion to Proceed Under Pseudonym for both "John Doe" (the university respondent and Plaintiff here) and "Jane Roe" (the university complainant) and hereby issues a protective order against disclosure by any party of the real names of "John Doe" and "Jane Roe."

Dated _____

_____
U.S. District Judge Richard G. Stearns

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **JOHN DOE,** | : | |
| | : | **Civil Action No: 1:21-cv-12060-RGS** |
| **Plaintiff,** | : | |
| | : | |
| -against- | : | |
| | : | |
| **MASSACHUSETTS INSTITUTE OF** | : | |
| **TECHNOLOGY,** | : | |
| | : | |
| **Defendant.** | : | |

### NOTICE OF APPEAL TO THE
### U.S. COURT OF APPEALS FOR THE FIRST CIRCUIT

Notice is hereby given that Plaintiff John Doe, hereby appeals to the United States Court of Appeals for the First Circuit from the December 21, 2021, Electronic Order (Dkt. 6) denying the Plaintiff John Doe's Motion to Proceed Under Pseudonym and from the January 11, 2022, Electronic Order (Dkt. 12) denying the Order to Show Cause to reconsider the Court's Electronic Order dated December 21, 2021, denying the Plaintiff's Motion to Proceed Under Pseudonym, and upon reconsideration, grant the Motion to Proceed Under Pseudonym for both "John Doe" (the university respondent and Plaintiff John Doe here) and "Jane Roe" (the university complainant) and for a protective order against disclosure by any party of the real names of "John Doe" and "Jane Roe." Also, the January 11, 2022, Electronic Order (Dkt. 12) stayed the action so that Plaintiff John Doe could take an appeal to the United States Court of Appeals for the First Circuit of the Court's collateral order. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

Respectfully submitted on this 19th day of January, 2022.

**Respectfully submitted,**

**NESENOFF & MILTENBERG, LLP**
**By:** **/s/ *Philip A. Byler***
**Philip A. Byler, Esq. (admitted *pro hac vice*)**
**Andrew T. Miltenberg, Esq. (*pro hac vice* forthcoming)**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**pbyler@nmllplaw.com**
**amiltenberg@nmllplaw.com**

**and**

**By:** **/s/ *Tara Davis***
**Tara Davis, Esq. (BBO # 675346)**
**Regina M. Federico, Esq. (BBO #700099)**
**101 Federal Street, Nineteenth Floor**
**Boston, Massachusetts 02110**
**(617) 209-2127**
**tdavid@nmllplaw.com**
**rfederico@nmllplaw.com**

***Attorneys for Plaintiff John Doe***

**<u>CERTIFICATE OF SERVICE</u>**

This document was served electronically upon all counsel of record by filing through the ECF system on January 19, 2022.

*/s/ <u>Tara J. Davis</u>*
Tara J. Davis