No. 22-1056

---

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---

John Doe,
*Plaintiff-Appellant,*
v.
Massachusetts Institute of Technology,
*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
The Honorable Richard G. Stearns
Case No. 1:21-cv-12060-RGS

---

## BRIEF OF *AMICUS CURIAE* PROF. EUGENE VOLOKH IN
## SUPPORT OF NEITHER PARTY

---

Eugene Volokh*
First Amendment Clinic
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

*   Counsel would like to thank Aris Prince and So-Young Kim, UCLA
School of Law students who worked on the brief.

# Table of Contents

Table of Contents........................................................................i

Table of Authorities.................................................................iii

Interest of *Amicus Curiae* .......................................................1

Summary of Argument.............................................................1

Argument ...................................................................................6

   I.   There is a strong presumption against pseudonymity in
      civil litigation ...................................................................6

      A.   The Federal Rules of Civil Procedure generally require
          that parties be named .............................................6

      B.   This Court has implicitly recognized a strong
          presumption against pseudonymity ......................7

      C.   This Court ought to accept a presumption against
          pseudonymity with categorical exceptions for
          extraordinary classes of cases ...............................8

   II.  Reasons to allow pseudonymity to Title IX plaintiffs
      alleging that they were wrongly found guilty of alleged
      sexual misconduct.........................................................15

      A.   The great majority of district courts have ruled in
          favor of pseudonymity in such cases ...................15

      B.   Amplification of allegations may cause reputational
          damage....................................................................17

      C.   Denying pseudonymity may deter the filing of
          meritorious claims.................................................19

III. Policy reasons underscoring the strong presumption
    against pseudonymity apply to this case ................................... 19

    A.   Ubiquity of reputational risk in civil litigation ................. 20

    B.   Value to the public of access to party names ...................... 25

    C.   Fairness to opponent ............................................. 28

    D.   Accuracy and efficiency of fact-finding ............................ 31

Conclusion ................................................................ 33

Certificate of Compliance ................................................. 35

Certificate of Service .................................................... 36

# Table of Authorities

## Cases

*A.B.C. v. XYZ Corp.*, 282 N.J. Super. 494 (App. Div. 1995) ...................33

*Chalmers v. Martin*, No. 21-cv-02468-NRN, 2021 WL
    6136179 (D. Colo. Dec. 28, 2021).........................................22

*Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S.
    157 (2004) ........................................................................16

*Cowley v. Pulsifer*, 137 Mass. 392 (1884) ................................25

*DePuy Synthes Prod., Inc. v. Veterinary Orthopedic
    Implants, Inc.*, 990 F.3d 1364 (Fed. Cir. 2021)....................7

*Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49
    (D.D.C. 2019)..................................................................29

*Doe v. Blue Cross & Blue Shield United of Wisc.,* 112 F.3d
    869 (7th Cir. 1997) .....................................................1, 26

*Doe v. Bogan*, No. CV 1:21-MC-00073, 2021 WL 3855686
    (D.D.C. June 8, 2021)................................................13, 21

*Doe v. Del Rio*, 241 F.R.D. 154 (S.D.N.Y. 2006) .....................31

*Doe v. Delta Airlines Inc.*, 310 F.R.D. 222 (S.D.N.Y. 2015) ...................31

*Doe v. Delta Airlines*, 672 F. App'x 48 (2d Cir. 2016)..............31

*Doe v. Dep't of Army*, No. 1:21-mc-00114, 2021 WL
    4260393 (D.D.C. Sept. 14, 2021) .......................................20

*Doe v. Doe*, 668 N.E.2d 1160 (Ill. Ct. App. 1996).......................3

*Doe v. Doe*, No. 20-cv-5329(KAM)(CLP), 2020 WL 6900002
    (E.D.N.Y. Nov. 24, 2020)......................................................23

*Doe v. Elson S Floyd Coll. of Med. at Washington State Univ.*, No. 2:20-cv-00145-SMJ, 2021 WL 4197366 (E.D. Wash. Mar. 24, 2021) ........................................................................ 33

*Doe v. Fedcap Rehab. Servs., Inc.*, No. 17-cv-8220 (JPO), 2018 WL 2021588 (S.D.N.Y. Apr. 27, 2018) .................................. 31

*Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992) ............................................ 2

*Doe v. Garland*, No. 21-mc-44, 2021 WL 3622425 (D.D.C. Apr. 28, 2021) ........................................................................ 20

*Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137 (S.D. Ind. 1996) .................................................................................. 29

*Doe v. Lieberman*, No. 1:20-cv-02148 (D.D.C. Aug. 5, 2020) ................. 21

*Doe v. MacFarland*, 117 N.Y.S.3d 476 (Sup. Ct. 2019) ........................... 30

*Doe v. Main Line Hosps., Inc.*, No. CV 20-2637, 2020 WL 5210994 (E.D. Pa. Sept. 1, 2020) ...................................................... 12

*Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011) ................................. passim

*Doe v. Milwaukee Cnty.*, No. 18-cv-503, 2018 WL 3458985 (E.D. Wisc. July 18, 2018) .................................................... 12, 16, 20

*Doe v. Pa. Dep't of Corrections*, No. 19-1584, 2019 WL 5683437 (M.D. Pa. Nov. 1, 2019) .................................................. 10, 11

*Doe v. Settle*, 24 F.4th 932 (4th Cir. 2022) ............................................ 17

*Doe v. Smith*, 429 F.3d 706 (7th Cir. 2005) ........................................... 29

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) ........................................... 7

*Doe v. Temple Univ.*, Civ. A 13-5156 (E.D. Pa. Aug. 7, 2014) .................................................................................... 24

*Doe v. Temple Univ.*, No. 14-cv-4729, 2014 WL 4375613 (E.D. Pa. Sept. 3, 2014) ................................................ 17, 24, 26

iv

*Doe v. Trustees of Dartmouth Coll.*, No. 18-cv-040-LM,
    2018 WL 2048385 (D.N.H. May 2, 2018) ................................... passim

*Doe v. Trustees of Indiana Univ.*, No. 1:21-cv-02903-JRS-
    MJD, 2022 WL 36485 (S.D. Ind. Jan. 3, 2022) ................................... 17

*Doe v. Univ. of Me. Sys.*, No. 1:19-cv-00415-NT, 2020 WL
    981702 (D. Me. Feb. 20, 2020) ................................................ 10, 18, 19

*Doe v. Univ. of South*, No. 4:09-cv-62, 2011 WL 13187184
    (E.D. Tenn. July 8, 2011) .................................................................... 18

*Doe v. W. New England Univ.*, No. CV 3:19-30124-TSH,
    2019 WL 10890195 (D. Mass. Dec. 16, 2019) ..................................... 23

*Doe v. Weinstein*, 484 F. Supp. 3d 90 (S.D.N.Y. 2020) ........................... 32

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d
    1058 (9th Cir. 2000) ............................................................................ 1

*Femedeer v. Haun*, 227 F.3d 1244 (10th Cir. 2000) ................................. 1

*FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir.
    1987) ...................................................................................................... 8

*Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831 (7th Cir.
    2013) .............................................................................. 2, 7, 25, 26

*In re Sealed Case*, 931 F.3d 92 (D.C. Cir. 2019) ............................. 5, 7, 28

*Lawson v. Rubin*, No. 17CV6404BMCSMG, 2019 WL
    5291205 (E.D.N.Y. Oct. 18, 2019) ...................................................... 32

*Michael v. Bloomberg L.P.*, No. 14-cv-2657 TPG, 2015 WL
    585592 (S.D.N.Y. Feb. 11, 2015) ........................................................ 13

*Morice v. Hosp. Serv. Dist. #3*, 430 F. Supp. 3d 182 (E.D.
    La. 2019) .............................................................................................. 21

*N.J. v. Yocom*, 257 F.3d 1171 (10th Cir. 2001) ........................................ 6

*Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240 (10th Cir. 1989) .................................................................. 23

*Nat'l Org. for Marriage v. McKee*, 649 F.3d 34 (1st Cir. 2011) ....................................................................... 2, 7, 8, 25

*Plaintiff B v. Francis*, 631 F.3d 1310 (11th Cir. 2011) ............................ 6

*Plaintiff Dr. v. Hosp. Serv. Dist. #3*, No. CV 18-7945, 2019 WL 351492 (E.D. La. Jan. 29, 2019) .................................................. 21

*Qualls v. Rumsfeld*, 228 F.R.D. 8 (D.D.C. 2005) ................................ 8, 26

*Rapp v. Fowler*, No. 20-cv-9586 (LAK), 2021 WL 1738349 (S.D.N.Y. May 3, 2021) .................................................. 5, 28

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ............................................................................ 31

*Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979) ............................ 1, 13

*Tolton v. Day*, No. CV 19-945 (RDM), 2019 WL 4305789 (D.D.C. Sept. 11, 2019) ........................................................ 32

*United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995) .............................................................................. 1

*United States v. Pilcher*, 950 F.3d 39 (2d Cir. 2020) ................................ 1

*United States v. Stoterau*, 524 F.3d 988 (9th Cir. 2008) ............... 2, 11, 12

*Webster v. Fall*, 266 U.S. 507 (1925) ........................................................ 16

**Statutes and Rules**

20 U.S.C. § 1232g .................................................................. 25

**Other Authorities**

Fed. R. Civ. P. 10(a) .................................................................... 2, 6

Fed. R. Civ. P. 17(a)(1) ............................................................... 2, 6

**Rules**

Eugene Volokh, *The Law of Pseudonymous Litigation*, 73
    Hastings L.J. (forthcoming 2022), http://www.law.
    ucla.edu/volokh/pseudonym.pdf .................................................. passim

## Interest of *Amicus Curiae*[1]

Eugene Volokh is the Gary T. Schwartz Distinguished Professor of Law at UCLA School of Law. He is the author of *The Law of Pseudonymous Litigation*, 73 Hastings L.J. (forthcoming 2022), http://www.law.ucla.edu/volokh/pseudonym.pdf, and over 50 other law review articles and a casebook on First Amendment law.

## Summary of Argument

**I.** All circuit courts that have considered the matter have recognized the strong presumption against pseudonymity in civil litigation.[2] This Court has recognized a presumption against sealing of court records, *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st

---

[1] No party or party's counsel has wholly or partly authored this brief, or contributed money to fund preparing or submitting the brief. No person has contributed money to so fund the brief, except that UCLA School of Law will pay for printing and mailing.

[2] *See, e.g.*, *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020); *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011); *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979); *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000); *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000); *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463-64 (D.C. Cir. 1995).

1

Cir. 2011); the rule against pseudonymity is a facet of this presumption against sealing. *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013). And the requirement of litigating in one's own name is reflected in Federal Rules of Civil Procedure 10(a) and 17(a)(1).

This Court has not yet articulated a standard for when this presumption may be rebutted. Several district courts in this Circuit have adopted the Third Circuit's nine-factor balancing test, though such balancing tests often yield inconsistency and unpredictability (*see* pp. 8-15 below). Perhaps a better framing for the inquiry would be: Is this the sort of "exceptional case[]" in which pseudonymity ought to be allowed? *See Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("Lawsuits are public events. A plaintiff should be permitted to proceed anonymously only in . . . exceptional cases."). If granting pseudonymity would offer "no principled basis for denying pseudonymity" to others who are similarly situated, *United States v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008), and if the party cannot "set himself apart from any individual who may be" a party in a

similar case, *Doe v. Doe*, 668 N.E.2d 1160, 1167 (Ill. Ct. App. 1996), pseudonymity should be denied.

**II.** Turning to Title IX cases, there are at least three strong arguments for pseudonymity:

    A. When plaintiffs who allege that colleges wrongly found them guilty of sexual assault seek to proceed under a pseudonym, more than 80% of District Court decisions that *amicus* has found that have considered the matter have allowed pseudonymity. *See generally* Volokh, *supra*, at 84-90 (citing 82 such cases where pseudonymity was allowed and 16 where pseudonymity was disallowed).

    B. This is likely because "the mere accusation that one has committed a sexual assault can subject the accused to lasting reputational damage and harassment, even where . . . the accused is ultimately found not culpable of sexual assault." *Doe v. Trustees of Dartmouth Coll.*, No. 18-cv-040-LM, 2018 WL 2048385, \*5 (D.N.H. May 2, 2018). If such plaintiffs must sue under their real names, the allegations against them may forever be connected to the university's findings of sexual assault,

particularly now that court records are broadly available online.

C. Even plaintiffs who have strong claims may therefore decline to sue if they know they cannot be pseudonymous, or may drop the lawsuit once pseudonymity is denied. "Precluding pseudonymous litigation . . . may have a chilling effect on future plaintiffs who seek to challenge the adequacy of the process." *Id.* at *6.

**III.** On the other hand, there are at least four strong arguments against pseudonymity in these sorts of Title IX cases as well:

A. Plaintiffs' arguments for reputational protection in Title IX cases are similar to those in other cases, such as (1) plaintiffs' arguments in many employment cases, (2) plaintiffs' arguments in defamation cases, or (3) defendants' arguments in civil and criminal sexual assault cases. There too litigants face huge reputational risks if they litigate under their own names. Yet in those cases, as in nearly all cases in American courts, the parties must generally be named.

4

B. Open access to court proceedings stems from the public interest in supervising the operation of the court system, and that interest applies here, too. Activists, scholars, reporters, and the public all have a right to learn about, investigate, and discuss Title IX cases. Without knowing the names of the parties, the public's ability to understand the situation is sharply undermined: concealing party names effectively eliminates reporters', researchers', and activists' most important tool for uncovering further information about the case.

C. Pseudonymity can also create a "risk of unfairness to the opposing party," even when the defendant knows the plaintiff's identity. *In re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019). "[F]undamental fairness suggests that defendants are prejudiced when required to defend themselves publicly before a jury while plaintiffs make accusations from behind a cloak of anonymity." *Rapp v. Fowler*, No. 20-cv-9586 (LAK), 2021 WL 1738349, *7 (S.D.N.Y. May 3, 2021) (cleaned up).

D. Party-witnesses' pseudonymity can make the fact-finding process less reliable and more confusing.

Given the strength of the arguments on both sides, this brief does not argue for an ultimate bottom-line position; but it does aim to further inform this Court about the arguments in both directions.

## Argument

## I.  There is a strong presumption against pseudonymity in civil litigation

### A. The Federal Rules of Civil Procedure generally require that parties be named

Generally speaking, "[t]he title of the complaint must name all the parties," Fed. R. Civ. P. 10(a), and "[a]n action must be prosecuted in the name of the real party in interest," Fed. R. Civ. P. 17(a)(1). Rule 5.2(a)(3) provides only a limited exception to this, for minors.

Rule 10(a) "serves more than administrative convenience. It protects the public's legitimate interest in knowing all the facts involved, including the identities of the parties," thus "creat[ing] a strong presumption in favor of parties' proceeding in their own names." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (citation omitted). Likewise, Rule 17(a)(1) has also been read as presumptively precluding pseudonymity. *N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001) (also stating the same as to Rule 10(a)).

6

More broadly, whether because of the Rules or because of broader common-law principles of right of access to court records, all the circuits that have considered the matter have generally recognized a strong presumption against pseudonymity. *See supra* p. 1, n. 2. And some circuits have concluded that, just as sealing court records presumptively violates the First Amendment right of access to such records, pseudonymity does as well. *See, e.g., DePuy Synthes Prod., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1370 (Fed. Cir. 2021); *In re Sealed Case*, 931 F.3d at 96; *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

## B. This Court has implicitly recognized a strong presumption against pseudonymity

Though this Court has not expressly considered whether there is a strong presumption against pseudonymity, it has recognized in sealing cases that "[t]he starting point must always be the common-law presumption in favor of public access to judicial records." *Nat'l Org. for Marriage*, 649 F.3d at 70.

And courts have treated "litigat[ing] under a pseudonym" as simply a facet of the "right of public access to . . . judicial record[s]." *Goesel*, 738 F.3d at 833. "[H]aving judicial proceedings fully open to

the public so that the public may fully assess the merits of the law-
suit and the quality of the courts is in the public interest, . . . and is
a legitimate reason to [deny pseudonymity]." *Qualls v. Rumsfeld*,
228 F.R.D. 8, 13 (D.D.C. 2005).

Given that the presumption of public access to court records is
"strong and sturdy, . . . only the most compelling reasons can justify
non-disclosure of judicial records." *Nat'l Org. for Marriage*, 649 F.3d
at 70 (cleaned up). "While privacy rights of participants and third
parties" may, "in appropriate cases," "limit the presumptive right
of access to judicial records," *id.* at 72, that can happen only when
a compelling case is made that "exceptional circumstances exist
which overbear the public's right of access." *FTC v. Standard Fin.
Mgmt. Corp.*, 830 F.2d 404, 412 (1st Cir. 1987).

### C. This Court ought to accept a presumption against pseudonymity with categorical exceptions for extraor-dinary classes of cases

Different circuits have created different multi-factor balancing
tests for overcoming the presumption against pseudonymity.
Though the circuits are generally "in agreement that district courts
should balance a plaintiff's interest and fear against the public's

strong interest in an open litigation process," "each [court] presents a slightly different list of factors . . . to consider." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011).

In this Circuit, district courts have "turn[ed] to the standards developed by other courts of appeal," *see, e.g.*, *Trustees of Dartmouth Coll.*, 2018 WL 2048385, at *5-6, and especially the Third Circuit *Megless* test:

> The factors in favor of anonymity include[]: (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

> On the other side of the scale, factors disfavoring anonymity include[]: "(1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

> [The] list of factors is not comprehensive, and . . . trial courts
> "will always be required to consider those [other] factors
> which the facts of the particular case implicate."

654 F.3d at 409 (citations omitted). *See, e.g.*, *Trustees of Dartmouth Coll.*, 2018 WL 2048385, at *5-6; *Doe v. Univ. of Me. Sys.*, No. 1:19-cv-00415-NT, 2020 WL 981702, *6 (D. Me. Feb. 20, 2020).

"[M]ultifactor tests[, however,] can be difficult to apply, difficult to predict, and invite needless litigation." *Doe v. Pa. Dep't of Corrections*, No. 19-1584, 2019 WL 5683437, *2 (M.D. Pa. Nov. 1, 2019).

> To start, [the *Megless* factors] are hopelessly imprecise and
> redundant. For instance, the "universal level of public interest
> in access to the identities of litigants," whether "there is a par-
> ticularly strong interest in knowing the litigant's identities,"
> "the magnitude of the public interest in maintaining the con-
> fidentiality of the litigant's identity," and whether "there is an
> atypically weak public interest in knowing the litigant's iden-
> tities" are befuddlingly four separate factors. Surely, if there
> is a "particularly strong interest" in knowing the litigant's
> identities, then there is not an "atypically weak" public inter-
> est, which itself tells us something about the "magnitude" and
> "universal level" of the public interest in maintaining the liti-
> gant's confidentiality. These inquiries, and others, meander
> and criss-cross into each other's paths, to the extent they dif-
> fer at all.

*Id.* Multi-factor tests also "do[] not provide what weight each enumerated factor should be given, [or] how unenumerated factors should tip the balance." *Id.* Courts' implementations of these tests,

therefore, are unsurprisingly opaque and inconsistent in their analyses, and are "not conducive to the reader scrying which factors were determinative in the court's decision." *Id.* Going through the factor-by-factor analysis is a complicated and time-consuming way to reach the heart of the issue: whether the public's strong interest in open judicial proceedings must yield in light of the particular kind of harm asserted in the case.

And the focus must be on the particular kind of harm, because some kinds of harm are present in a vast range of cases; if those harms are seen as overcoming the presumption against pseudonymity, then the exception would swallow the rule. For example, nearly any defendant accused of child pornography would likely want to proceed under a pseudonym, for fear of massive reputational harms even if he is acquitted or the charges are dropped; yet such defendants cannot proceed pseudonymously. *See, e.g.*, *Stoterau*, 524 F.3d at 1013. Indeed, most criminal defendants would face reputational harm as a result of being named in a criminal case.

Likewise, professionals accused of malpractice would face harm from having to litigate under their own names, whether as defendants in a malpractice case or as plaintiffs alleging that they were improperly fired based on erroneous allegations of malpractice. Yet they too cannot proceed pseudonymously. *See, e.g.*, *Doe v. Milwaukee Cnty.*, No. 18-cv-503, 2018 WL 3458985 (E.D. Wisc. July 18, 2018). Plaintiffs suing over discrimination or other mistreatment where based on their past or current addictions would face serious reputational harm from suing under their own names. Yet there too, pseudonymity is generally not allowed. *See, e.g.*, *Doe v. Main Line Hosps., Inc.*, No. CV 20-2637, 2020 WL 5210994 (E.D. Pa. Sept. 1, 2020).

Such reputational concerns are so common in litigation generally that, if pseudonymity were to be granted simply to protect parties against potential unjustifiable damage to reputation, "there would be no principled basis for denying pseudonymity" to a vast range of litigants. *Stoterau*, 524 F.3d at 1013. Civil litigation "frequently involve[s] statements that, if taken to be true, could embarrass or cause . . . reputation harm." *Doe v. Bogan*, No. CV 1:21-MC-00073,

2021 WL 3855686, *3 (D.D.C. June 8, 2021). "This does not come close to justifying anonymity, however, and plaintiffs regularly litigate . . . claims on the public docket even when the [facts] could, if taken as true, cause them some reputation harm." *Id.*

The key to plaintiffs' successfully rebutting the presumption against pseudonymity, therefore, must lie in showing how the potential harm they face is unusual in a way that merits such special treatment. *See, e.g.*, *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) ("[Plaintiffs] face no greater threat of retaliation than the typical plaintiff alleging Title VII violations, including the other women who, under their real names and not anonymously, have filed sex discrimination suits against large law firms."); *Michael v. Bloomberg L.P.*, No. 14-cv-2657 TPG, 2015 WL 585592, *3 (S.D.N.Y. Feb. 11, 2015) ("To depart in this case from the general requirement of disclosure would be to hold that nearly any plaintiff bringing a lawsuit against an employer would have a basis to proceed pseudonymously. The court declines to reach such a holding.").

13

Instead of adopting some multi-factor balancing test, it therefore may be better for the court to proceed by (1) accepting the strong presumption against pseudonymity called for by the Federal Rules of Civil Procedure, and then (2) determining, over time, what narrow categorical limitations or exceptions should be recognized, tailored to unusual categories of cases that sufficiently distinguish themselves from the norm.

One such categorical limitation to the presumption against pseudonymity, for instance, could be for purely legal challenges where, "because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities." *Megless*, 654 F.3d at 409. In such a case, a litigant's identity is generally less important to analyzing substantive questions, so the presumption against pseudonymity is weakened (but not destroyed). Another categorical exception is already listed in Rule 5.2(a)(3), which requires that "the name of an individual known to be a minor" be replaced by "the minor's initials."

Much like how, historically, courts have developed various rules (such as the parol evidence rule) while developing well-defined exceptions, this Court could create a simplified rule surrounding the law of pseudonymity. But the focus in crafting any such exception must be on limiting it to cases that are truly exceptional, and that are categorically distinguishable from normal civil cases—cases where most parties may prefer to be pseudonymous, but cannot be allowed to so proceed.

## II.  Reasons to allow pseudonymity to Title IX plaintiffs alleging that they were wrongly found guilty of alleged sexual misconduct

There are eminently plausible reasons in favor of pseudonymity in these sorts of cases. What follows is only an abbreviated analysis, because space is limited and because appellant and his *amici* discuss this in more detail; the relative brevity of the summary is not intended to dismiss the importance of the arguments.

### A. The great majority of district courts have ruled in favor of pseudonymity in such cases

Many district courts have allowed pseudonymity to plaintiffs alleging that colleges wrongly found them guilty of sexual misconduct. *See generally* Volokh, *supra*, at 84-90 (citing 82 allegedly improper

Title IX investigation cases where pseudonymity was allowed and 16 where pseudonymity was disallowed). This has partly flowed from universities' often agreeing to pseudonymity. Courts have concluded that, in such cases, "the accused colleges and universities recognize the highly personal and sensitive nature of these cases as well as the limited value of forcing plaintiffs to reveal identities when seeking to vindicate their federal rights." *Colgate Univ.*, 2016 WL 1448829, at \*3.

(The 82-to-16 count does not include the circuit cases that have involved Doe plaintiffs, because those circuit opinions, unlike the district court cases noted above, did not include any holdings about pseudonymity. "'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'" *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 170 (2004) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)); *see, e.g.*, *Milwaukee Cnty.*, 2018 WL 3458985, at \*1 (dismissing out-of-circuit precedents on the grounds that "none of those cases discusses the plaintiff's right to proceed under a pseudonym"); *Doe v. Trustees of*

16

*Indiana Univ.*, No. 1:21-cv-02903-JRS-MJD, 2022 WL 36485, *4 n.2 (S.D. Ind. Jan. 3, 2022) (likewise). And sometimes circuit courts let cases proceed pseudonymously simply because they were pseudo-nymized below. *See, e.g.*, *Doe v. Settle*, 24 F.4th 932, 939 n.5 (4th Cir. 2022) ("The district court granted Doe leave to pursue this lawsuit under a pseudonym, but it is not clear why. A litigation pseudonym is a 'rare dispensation.' The public has a strong interest in knowing the names of parties, and it is the district court's job to ensure that a party's individual interest in anonymity truly outweighs the public interest in open-air litigation. . . . [P]erhaps the district court incorrectly balanced the interests here. But since this issue has gone unchallenged and unbriefed, we leave any reconsideration to the district court." (citations omitted)).)

## B. Amplification of allegations may cause reputational damage

Publicly connecting the names of Title IX plaintiffs with the sex-ual misconduct allegations over which they are suing can "damage" the plaintiffs' "personal and professional reputation[s]." *Doe v. Temple Univ.*, No. 14-cv-4729, 2014 WL 4375613, *2 (E.D. Pa. Sept. 3, 2014). "[B]eing accused of sexual assault is a serious allegation with

which one would naturally not want to be identified publicly." *Doe v. Univ. of South*, No. 4:09-cv-62, 2011 WL 13187184, *19 (E.D. Tenn. July 8, 2011). "[T]he mere accusation that one has committed a sexual assault can subject the accused to lasting reputational damage and harassment, even where . . . the accused is ultimately found not culpable of sexual assault." *Trustees of Dartmouth Coll.*, 2018 WL 2048385, at *5; *see also, e.g.*, *Colgate Univ.*, 2016 WL 1448829, at *3. And this is especially so given modern technology: simple Google searches of plaintiffs' names could quickly connect them to any court decisions in their cases, any articles about the lawsuits, and often to the complaints and similar filings.

In some cases, courts conclude that publicizing a plaintiff's name could yield "harassment and even physical assault if his true identity [was] revealed," *Univ. of Me. Sys.,* 2020 WL 981702, at *5; in that case, plaintiff pointed to a Facebook post responding to a news article on the cases, in which an individual called the plaintiff a "scumbag" and asked, "do I still know anyone around Farmington with a good brick-throwing arm?" *Id.* But in most cases, the concern is fundamentally about reputational damage and the professional,

economic, and social damage that the reputational damage can cause.

### C. Denying pseudonymity may deter the filing of meritorious claims

Having to sue under one's own name can therefore also discourage plaintiffs from filing even meritorious lawsuits to enforce their Title IX rights, contractual rights, or (in public universities) Due Process Clause rights. Indeed, if a plaintiff's identity is disclosed in one case, "other similarly situated litigants [might] be deterred from litigating claims that the public wants to see litigated." *Univ. of Me. Sys.*, 2020 WL 981702, at *6; *Megless*, 654 F.3d at 410. "Precluding pseudonymous litigation . . . may have a chilling effect on future plaintiffs who seek to challenge the adequacy of the process." *Trustees of Dartmouth Coll.*, 2018 WL 2048385, at *6 (citing *Colgate Univ.*, 2016 WL 1448829, at *3).

### III. Policy reasons underscoring the strong presumption against pseudonymity apply to this case

At the same time, there are also substantial reasons to reject pseudonymity in such cases, and to maintain the norm of public access. This court will discuss them in more detail, because at this

stage in the briefing it is not clear whether MIT will oppose pseu-

donymity and will therefore discuss these arguments.

## A.  Ubiquity of reputational risk in civil litigation

First, the reputational risk in cases alleging wrongful expulsion

is similar to that in many other cases. For instance, a plaintiff fired

for alleged misconduct (including sexual misconduct) may sue

claiming the real reason for the firing was race or sex; yet that does

not justify pseudonymity:

> [A] plaintiff alleging he was discriminated against by his em-
> ployer when his employment was terminated typically will
> have to disclose the employer's reason for terminating the
> plaintiff's employment—a reason that the plaintiff disputes is
> the real reason and which is often embarrassing or even dam-
> aging to his or her reputation.

*Milwaukee Cnty.*, 2018 WL 3458985, at *1 (rejecting pseudonymity

in such a case). The same reputational risk, of course, arises when

professionals sue alleging they were wrongly fired based on un-

sound or biased allegations of malpractice; but there too pseudo-

nymity is not allowed, despite the risk of reputational damage. *Doe*

*v. Dep't of Army*, No. 1:21-mc-00114, 2021 WL 4260393, *3 (D.D.C.

Sept. 14, 2021); *Doe v. Garland*, No. 21-mc-44, 2021 WL 3622425,

*2 (D.D.C. Apr. 28, 2021); *Doe v. Lieberman*, No. 1:20-cv-02148, at

5 (D.D.C. Aug. 5, 2020); *Plaintiff Dr. v. Hosp. Serv. Dist. #3*, No. CV 18-7945, 2019 WL 351492, *3 (E.D. La. Jan. 29, 2019) (for factual details, see *Morice v. Hosp. Serv. Dist. #3*, 430 F. Supp. 3d 182, 191 (E.D. La. 2019)).

Likewise, plaintiffs suing for defamation (including over allegedly defamatory sexual assault allegations) may worry that suing will just further amplify the defamation; yet this does not generally justify pseudonymity:

> The allegations in defamation cases will very frequently involve statements that, if taken to be true, could embarrass plaintiffs or cause them reputation harm. This does not come close to justifying anonymity, however, and plaintiffs regularly litigate defamation claims on the public docket even when the allegedly defamatory statement could, if taken as true, cause them some reputation harm.

*Bogan*, 2021 WL 3855686, at *3; *Roe v. Does 1-11*, No. 20-cv-3788-MKB-SJB, 2020 WL 6152174 (E.D.N.Y. Oct. 14, 2020) (likewise).

And of course many defendants being sued for sexual assault or other misconduct might worry about reputational damage from the lawsuit, even if they eventually prevail. Yet that too does not generally justify pseudonymity:

> The supposed harm from being the target of a lawsuit alleging sexual abuse is not enough to justify shrouding this case with

21

a veil of secrecy. . . . "In nearly all civil and criminal litigation filed in the United States Courts, one party asserts that the allegations leveled against it by another party are patently false, and the result of the litigation may quickly prove that. However, if the purported falsity of the complaint's allegations were sufficient to seal an entire case, then the law would recognize a presumption to seal instead of a presumption of openness."

*Chalmers v. Martin*, No. 21-cv-02468-NRN, 2021 WL 6136179, *2-3 (D. Colo. Dec. 28, 2021) (applying that reason to pseudonymity as well as to outright sealing) (citation omitted).

Likewise, a concern about revealing intimate details about the plaintiff's sexual behavior—and about implicitly identifying his accuser, to those who know the plaintiff—would arise in many cases where someone says he has been wrongly accused of sexual misconduct. It would arise for criminal defendants in sexual assault prosecutions; for civil defendants in sexual assault lawsuits; for defamation plaintiffs in cases brought over sexual misconduct allegations; and for employment law plaintiffs who were allegedly fired for sexual misconduct, but who claim that was just a pretext. Yet pseudonymity is generally not allowed in such situations.

(For a rare—and likely unsound—case in which a sexual assault defendant was allowed to proceed pseudonymously, *see Doe v. Doe*,

22

No. 20-cv-5329(KAM)(CLP), 2020 WL 6900002, *3 (E.D.N.Y. Nov. 24, 2020). The court there noted that "the chance that [defendant] would suffer reputational harm is significant. The defendant is a partner of a well-known law firm in New York and an adjunct law school instructor." *Id.* And it then allowed pseudonymity on the grounds that, "[i]f the defendant were named, he would likely feel significant pressure to settle this case regardless of the merits of the plaintiff's allegations." *Id.* Such a result is far from the norm in our legal system, where such defendants are routinely not pseudonymized.)

More broadly, courts have routinely said that pseudonymity "has not been permitted when only the plaintiff's economic or professional concerns are involved." *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989). This is why some district courts have indeed denied pseudonymity to Title IX plaintiffs. *See, e.g.*, *Doe v. W. New England Univ.*, No. CV 3:19-30124-TSH, 2019 WL 10890195, *1 (D. Mass. Dec. 16, 2019); *Trustees of Dartmouth Coll.*, 2018 WL 2048385, at *5-6. In *Doe v. Temple University*, the court even specifically held that plaintiff's diminished chance of

attending medical school was "exactly the kind of 'embarrassment [and] economic harm' that d[id] not support the use of a pseudonym." 2014 WL 4375613, at *2; *see also Doe v. Temple Univ.*, Civ. A 13-5156, at 3 (E.D. Pa. Aug. 7, 2014) (a different judge holding that a different plaintiff's diminished chances of acceptance to dental school because of expulsion for sexual misconduct did not support the use of a pseudonym).

Students who are suing claiming they were wrongly accused of sexual misconduct are right to be concerned about the reputational harm of suing in their own names. But it is hard to see how this potential harm sufficiently differs from the reputational harm facing all the other parties discussed above.

To be sure, college students are young people at the start of their careers; but middle-aged workers might find it even harder to overcome such reputational harm than young workers. Likewise, the students are suing over the outcome of confidential college processes, but employees often sue over the outcome of confidential internal employer processes. (The Family Education Rights and Pri-

24

vacy Act, 20 U.S.C. § 1232g, only constrains educational institutions, and does not purport to order courts to keep matters confidential in judicial proceedings.) In all these situations, people are seeking pseudonymity to prevent reputational harm, but that is generally not seen as sufficient to justify pseudonymity.

## B. Value to the public of access to party names

And the value to the public of access to party names in Title IX wrongful-discipline cases is comparable to that in other cases. The right of public access to court records is aimed at enabling the public to "monitor the functioning of our courts" and support "quality, honesty, and respect for our legal system." *Nat'l Org. for Marriage*, 649 F.3d at 70; *see also Goesel*, 738 F.3d at 833. "[T]he trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884) (Oliver Wendell Holmes, J.). This rationale

was first articulated as to the fair report privilege, but has since been applied to the "right of public access to . . . judicial record[s]," including to the presumption against "litigat[ing] under a pseudonym" (which can be overcome only for "compelling reasons"). *Goesel*, 738 F.3d at 833.

"Identifying the parties to the proceeding is an important dimension of publicness," because "[t]he people have a right to know who is using their courts." *Doe v. Blue Cross & Blue Shield United of Wisc.,* 112 F.3d 869, 872 (7th Cir. 1997). The principle of "[h]aving judicial proceedings fully open to the public so that the public may fully assess the merits of the lawsuit and the quality of the courts" includes having "litigants . . . use real names." *Qualls*, 228 F.R.D. at 13. This is especially so because public assessments of the credibility of the parties, whether as to their in-court statements or as to their court filings, will often require knowing their identities.

"Sexual assaults on college campuses, and the measures universities are taking to respond to these incidents, are important issues commanding national attention." *Temple Univ.*, 2014 WL 4375613, at *2. Activists, scholars, reporters, and the public at large have a

right to learn about, discuss, and investigate Title IX litigation. But without knowing the names of the parties involved, the public's ability to understand the situation is sharply undermined—especially since cases such as this involve factual disputes and not just purely legal challenges (such as facial challenges to the constitutionality of statutes, *see* Volokh, *supra*, at 25-27).

Consider, for instance, how industrious reporters would cover a court case (and court cases are of course a staple of media coverage). They would read the filings, but they should also seek to go further. They might check whether there had been any earlier newspaper coverage of the incident. They might check whether the plaintiff had been prosecuted for the events described in the Complaint; or had filed a defamation lawsuit against the accuser; or had sought a restraining order against the accuser, claiming the accuser was actually the culpable party. They might check whether the plaintiff had filed other similar cases in the past, or might have been a criminal or civil defendant in similar cases.

They might look at the plaintiff's social media accounts. They might call people they know in the relevant community or institution, and ask: What is being said about the incident? What is the plaintiff's reputation? Had there been other accusations against the plaintiff that had not been publicized before? Which other people might know more about the situation?

But without the accused's name, media coverage would be limited to simply relaying the plaintiff's anonymous allegation, together with any formal public statement that the defendant may choose to make. The rich coverage that can truly enable the public to understand what is going on in the case would be unavailable.

## C. Fairness to opponent

Pseudonymity can also create a "risk of unfairness to the opposing party," *In re Sealed Case*, 931 F.3d at 97, even when the defendant knows the plaintiff's identity. "[F]undamental fairness suggests that defendants are prejudiced when required to defend themselves publicly before a jury while plaintiffs make accusations from behind a cloak of anonymity." *Rapp*, 2021 WL 1738349, at *7 (cleaned up). "[A]nonymity provides a shield behind which defamatory charges

may be launched without shame or liability." *Doe v. Smith*, 429 F.3d

706, 710 (7th Cir. 2005).

A plaintiff's pseudonymity also makes it hard for defendants to

defend themselves in public:

> The defendants . . . have a powerful interest in being able to
> respond publicly to defend their reputations [against plain-
> tiff's allegations] . . . in . . . situations where the claims in the
> lawsuit may be of interest to those with whom the defendants
> have business or other dealings. Part of that defense will or-
> dinarily include direct challenges to the plaintiff's credibil-
> ity . . . [Plaintiff] cannot use his privacy interests as a shelter
> from which he can safely hurl these accusations without sub-
> jecting himself to public scrutiny, even if that public scrutiny
> includes scorn and criticism.

*Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 142 (S.D. Ind.

1996); *see also Smith*, 429 F.3d at 710; *Doe 1 v. George Washington*

*Univ.*, 369 F. Supp. 3d 49, 68 n.9 (D.D.C. 2019). In this case, for

example, MIT may have information that provides support for its

position, but that they cannot reveal without disclosing the plain-

tiff's identity. Even if no formal gag order accompanies the pseudo-

nymity order (see Volokh, *supra*, at 22-23, for examples of such gag

orders), defendants likely would not feel fully comfortable publicly

identifying an adversary as to whom the judge had issued a pseu-

donymity order. They might worry that doing so, even if not a violation of the letter of the order, would be seen as defying its spirit. And a litigant whose case is before that judge might be reluctant to engage in anything that can be perceived as defiance.

To be sure, MIT might not seek to publicly challenge plaintiff's story, and might not oppose pseudonymity in this case; *amicus* does not know MIT's position on this yet. Nonetheless, other defendants in similar cases might want to be able to speak publicly about their cases and about plaintiffs' identities, especially when plaintiffs' counsel have spoken publicly to accuse the defendants. And in any event, even if the defendants stipulate to confidentiality, the public interests discussed in the preceding subsections would still apply.

Allowing one side to be pseudonymous can also "create an imbalance in settlement negotiating positions." *Doe v. MacFarland*, 117 N.Y.S.3d 476, 497 (Sup. Ct. 2019). "While a publicly accused defendant might be eager to settle in order to get its name out of the public eye, a pseudonymous plaintiff might hold out for a larger settlement because they face no such reputational risk." *Doe v. Fedcap Rehab.*

*Servs., Inc.*, No. 17-cv-8220 (JPO), 2018 WL 2021588, *2-3 (S.D.N.Y. Apr. 27, 2018).

## D. Accuracy and efficiency of fact-finding

Pseudonymity can also make the fact-finding process less reliable because "pseudonymous witness[es]" may feel less inhibited "from fabricating or embellishing an account." *Doe v. Delta Airlines Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015), *aff'd*, 672 F. App'x 48 (2d Cir. 2016). And pseudonymity also makes it less likely that valuable witnesses will come forward. *See, e.g.*, *id.* (denying pseudonymity partly because "witnesses, upon the disclosure of Doe's name, [may] 'step forward [at trial] with valuable information about the events or the credibility of witnesses'" (quoting *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 596-97 (1980) (Brennan, J., concurring) ("Public trials come to the attention of key witnesses unknown to the parties."))).

Potential witnesses may also be further discouraged from testifying if courts routinely require them to keep the plaintiff's identity

secret. *See* Volokh, *supra*, at 32-34 (giving examples of such gag orders imposed on witnesses in order to protect plaintiff's pseudonymity). Legally enforceable confidentiality obligations are a burden, especially when they relate to an acquaintance. Witnesses may not want to be legally bound to indefinitely keep such secrets; having to incur such an unpaid-for obligation may be enough to deter some witnesses from testifying. *See, e.g.*, *Doe v. Weinstein*, 484 F. Supp. 3d 90, 96-97 (S.D.N.Y. 2020) (refusing to allow plaintiff to be pseudonymous partly because this would make it harder for defendant to depose witnesses).

Finally, letting a party testify pseudonymously might also prejudice the jury (in those cases that go to trial), by "risk[ing] . . . giving [the party's] claim greater stature or dignity," *Lawson v. Rubin*, No. 17CV6404BMCSMG, 2019 WL 5291205, *3 (E.D.N.Y. Oct. 18, 2019), or by implicitly "tarnish[ing]" a defendant by conveying to the jury "the unsupported contention that the [defendant] will seek to retaliate against [the plaintiff]." *Tolton v. Day*, No. CV 19-945 (RDM), 2019 WL 4305789, *4 (D.D.C. Sept. 11, 2019). "Defendant might well be prejudiced in defending against a complaint by being

perceived as a wrongdoer by the very fact of anonymity alone."
*A.B.C. v. XYZ Corp.*, 282 N.J. Super. 494, 504 (App. Div. 1995).

Pseudonyms can also confuse witnesses (at trial or in deposi-
tions) and jurors. For example, in a student lawsuit over a medical
school's disciplinary actions, a court rejected pseudonymity partly
because, "witnesses, who know Plaintiff by her true name, may
come across as less credible if they are struggling to remember to
use Plaintiff's pseudonym," which would create "a risk of prejudice
to Defendant." *Doe v. Elson S Floyd Coll. of Med. at Washington
State Univ.*, No. 2:20-cv-00145-SMJ, 2021 WL 4197366, *3 (E.D.
Wash. Mar. 24, 2021).

## Conclusion

Many courts have allowed Title IX plaintiffs to proceed under
pseudonyms; that a named plaintiff may be subject to lasting repu-
tational damage, economic harm, and harassment; and that requir-
ing the plaintiff to be named might deter meritorious lawsuits. This
counsels in favor of allowing pseudonymity.

On the other hand, these reputational arguments in Title IX
cases do not appear to markedly differ from those in other cases,

where reputational risk does not suffice to allow pseudonymity. Reporters, activists, scholars, and the public also have valid interests in full investigation and coverage of Title IX cases, which pseudonymity would stymie. And, whether or not MIT objects to pseudonymity here, future defendants may be unfairly harmed if plaintiffs can be pseudonymous while defendants are named, and the fact-finding process may be harmed as well.

> Respectfully Submitted,
>
> s/ <u>Eugene Volokh</u>
>
> *Amicus Curiae*

34

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,491 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2016 in 14-point Century Schoolbook.

Dated: April 17, 2022

s/ Eugene Volokh
*Amicus Curiae*
First Amendment Clinic
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

## Certificate of Service

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system on April 17, 2022.

All participants in the case are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: April 17, 2022

s/ Eugene Volokh
*Amicus Curiae*